**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.    **CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>J'CAM INVESTMENTS LLC</u>
Plaintiff                                         Case # _____
                                                  Judge _____

vs.
<u>GREAT LAKES INSURANCE SE</u>
Defendant

II.    **AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

III.    **TYPE OF CASE**        (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**Composite Exhibit B**

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
      ☐ Business governance
      ☐ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☒ Other
      ☐ Antitrust/Trade regulation
      ☐ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☐ Discrimination—employment or other
      ☒ Insurance claims
      ☐ Intellectual property
      ☐ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

### COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

  <u>1</u>

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☐ no
    ☒ yes If "yes," list all related cases by name, case number, and court.
    <u>2023-001067-CA-01</u>

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Brittany Lauren Quintana</u>        Fla. Bar # <u>98746</u>
        Attorney or party                (Bar # if attorney)

<u>Brittany Lauren Quintana    </u>        <u>06/06/2023</u>
  (type or print name)               Date

Case 1:23-cv-22630-RAR Document 1-2 Entered on FLSD Docket 07/14/2023 Page 4 of 174

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.

J'CAM INVESTMENTS LLC,

     Plaintiff,

v.

GREAT LAKES INSURANCE SE,

     Defendant.

_____/

## **COMPLAINT**

Plaintiff, J'CAM INVESTMENTS LLC, ("Plaintiff"), sues Defendant, GREAT LAKES

INSURANCE SE ("Defendant"), and says:

### **The Parties, Jurisdiction And Venue**

1.    This is an action for damages that exceeds fifty thousand dollars ($50,000.00),

exclusive of interest, costs and attorney's fees.

2.    Plaintiff, J'CAM INVESTMENTS LLC, is a Florida corporation qualified to do

business in Florida and has, at all times material hereto, been conducting business in Miami-Dade

County, Florida.

3.    The Defendant, GREAT LAKES INSURANCE SE, is a corporation qualified to

do business in Florida and has, at all times material hereto, been conducting business in Miami-

Dade County, Florida.

4.      Venue is proper in Miami-Dade County, Florida because the contract, which forms the subject matter of this lawsuit, was executed in Miami-Dade County, Florida.

5.      Venue is also proper in Miami Dade County because the subject Property is located in Miami-Dade County, Florida.

6.      All conditions precedent to the filing of this lawsuit have occurred, been performed or waived and/or have been excused, including but not limited to the submission of the Notice of Intent to Litigate per Florida law as it relates to each of the two claims addressed in this Complaint. See Notices of Intent to Litigate attached hereto and incorporated herein as *Composite Exhibit "A."*

### General Allegations

7.      At all times material hereto, in consideration of a premium paid by the Plaintiff, there was an insurance policy in full force and effect issued by the Defendant to the Plaintiff.

8.      A complete copy of the Policy is attached hereto and incorporated herein as *Exhibit "B."*

9.      The Plaintiff purchased and paid the premium for a policy of homeowner's insurance issued by the Defendant, Policy Number JTA5002577 (the "Policy"), for property located at 2010 SW 6th Street, Unit 1, Miami, Florida 33135 and 2010 SW 6th Street, Unit 3, Miami, Florida 33135 (the "Property").

10.      Pursuant to the terms of the Policy, the Defendant agreed to provide insurance coverage to the Plaintiff for losses to the Property.

11.      On or about October 22, 2021, while the Policy was in full force and effect, the Property in Units 1, 2 and 3 sustained a covered water loss (the "Loss").

12.     The Loss was reported to the Defendant, and the Defendant initially refused to assign a claim number to the Loss for Units 1 and 3.

13.     Defendant advised that Plaintiff would need to open separate claims for Units 1 and 3 after acknowledging coverage for damage caused by discharges of water along the same plumbing drain line to Unit 2.

14.     Plaintiff was forced to file new claims for the damages to Unit 1 and Unit 3 in October of 2022.

15.     Defendant opened claim numbers 154317 and 154316 (the "Claims") for the Losses to Units 1 and 3.

16.     The Defendant refused to render a coverage decision on either of the Claims and refused to tender insurance benefits to the Plaintiff for the Losses.

17.     Defendant failed to pay the full amount of damages to the Plaintiff for the Losses as required by the subject Policy and Florida law.

18.     The Plaintiff suffered and continue to suffer damages and lost business income resulting from Defendant's breach of the Policy.

19.     The Plaintiff was obligated to retain the undersigned attorney for the prosecution of this action and is entitled to reasonable attorneys' fees and costs pursuant to Florida Statute Sections 627.428 and/or 626.9373.

**<u>Count I- Breach of Contract as to Claim No.: 154316</u>**

Plaintiff re-allege and incorporate paragraphs 1 through 19, as if fully set forth herein.

20.     This is a cause of action for breach of contract arising out of the Policy at issue in this action.

21.     It is undisputed that the Plaintiff and Defendant entered into a written contract, the Policy, wherein the Plaintiff agreed to pay a premium and the Defendant agreed to insure the Property.

22.     The Plaintiff paid the premiums due and owing as contemplated by the Policy and otherwise fully performed its obligations under the Policy.

23.     The insured's Property sustained damage for which the Defendant is contractually obligated to provide complete coverage to the Plaintiff as set forth in the Policy.

24.     The Loss sustained by the insured Property are covered under the Policy. Accordingly, Defendant was obligated to extend insurance coverage and to tender complete insurance benefits to place the insured's Property and Plaintiff in their pre-loss condition.

25.     Notwithstanding, Defendant failed to tender complete payment for the subject Loss in connection with Claim No.: 154316.

26.     Defendant's actions and failure to pay the full value of Plaintiff's loss as required by the Policy and Florida law constitute material breaches of the Policy.

27.     Plaintiff suffered damages as a direct and proximate cause of the Defendant's conduct.

**WHEREFORE**, Plaintiff, J'CAM INVESTMENTS LLC, respectfully demands the entry of judgment by this Court stating:

a.   that Plaintiff is entitled to insurance benefits for all losses sustained as a result of the covered insurance claim at issue herein;

b.   that Defendant's actions constituted material breaches of the Policy and violations of Florida law;

c.  that Plaintiff is entitled to costs and attorneys' fees under Sections 627.428/626.9373, and 57.041, Fla. Stat. and other applicable Florida Statutes; and

d.  that Plaintiff is entitled to such further relief as this Court deems fair and just.

**<u>Count II- Breach of Contract as to Claim No.: 154317</u>**

Plaintiff re-allege and incorporate paragraphs 1 through 19, as if fully set forth herein.

28.     This is a cause of action for breach of contract arising out of the Policy at issue in this action.

29.     It is undisputed that the Plaintiff and Defendant entered into a written contract, the Policy, wherein the Plaintiff agreed to pay a premium and the Defendant agreed to insure the Property.

30.     The Plaintiff paid the premiums due and owing as contemplated by the Policy and otherwise fully performed its obligations under the Policy.

31.     The insured's Property sustained damage for which the Defendant is contractually obligated to provide complete coverage to the Plaintiff as set forth in the Policy.

32.     The Loss sustained by the insured Property are covered under the Policy. Accordingly, Defendant was obligated to extend insurance coverage and to tender complete insurance benefits to place the insured's Property and Plaintiff in their pre-loss condition.

33.     Notwithstanding, Defendant failed to tender complete payment for the subject Loss in connection with Claim No.: 154317.

34.     Defendant's actions and failure to pay the full value of Plaintiff's loss as required by the Policy and Florida law constitute material breaches of the Policy.

35.     Plaintiff suffered damages as a direct and proximate cause of the Defendant's conduct.

**WHEREFORE**, Plaintiff, J'CAM INVESTMENTS LLC, respectfully demands the entry of judgment by this Court stating:

e.   that Plaintiff is entitled to insurance benefits for all losses sustained as a result of the covered insurance claim at issue herein;

f.   that Defendant's actions constituted material breaches of the Policy and violations of Florida law;

g.   that Plaintiff is entitled to costs and attorneys' fees under Sections 627.428/626.9373, and 57.041, Fla. Stat. and other applicable Florida Statutes; and

h.   that Plaintiff is entitled to such further relief as this Court deems fair and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all matters that are so triable as a matter of right.

**Dated:**  June 6, 2023.                                **QUINTANA LAW, PA**
                                                        *Attorneys for Plaintiff*
                                                        237 S. Dixie Highway
                                                        Floor 4, Suite #426
                                                        Coral Gables, Florida 33133
                                                        Tel. (305) 376-0821
                                                        Primary Email: bquintana@quintanalawpa.com
                                                        Secondary Email: paralegal@quintanalawpa.com

                                                        By:     */s/ Brittany Quintana Marti*
                                                                Brittany Quintana Marti, Esq.
                                                                Fla. Bar No. 98746

# EXHIBIT "A"

## Property Insurance Notice of Intent to Initiate Litigation

Notice Number:     <u>111274</u>

Notice Accepted:   **5/18/2023 12:46:25 PM**

☑   The submitter hereby states that The Property Insurance Intent to Initiate Litigation Notice is provided pursuant to Section 627.70152, Florida Statutes.

| Claimant (Insured filing suit under a residential or commercial insurance policy) |
| --- |

| | |
| --- | --- |
| Name: | **J'Cam Investments LLC** |
| Street Address: | **2010 SW 6th Street, Unit 1** |
| City, State Zip: | **Miami, FL 33135** |
| Email Address: | <u>helenb_2009@yahoo.com</u> |
| Policy Number: | **JTA5002577** |
| Claim Number: | **154317** |

| Attorney |
| --- |

| | |
| --- | --- |
| Name: | **Brittany Quintana Marti** |
| Street Address: | **237 S Dixie Highway, Ste 426** |
| City, State Zip: | **Coral Gables, FL 33133** |
| Email Address: | <u>bquintana@quintanalawpa.com</u> |
| Florida Bar #: | **98746** |
| Firm Name: | **Quintana Law P.A.** |
| Role on Claim: | **Represent Insured** |

\* Pursuant to Section 627.70152, Florida Statutes, the Attorney filing this Notice must provide a copy of this Notice to the Claimant. The Claimant's email address is a required field as this Notice will be transmitted to the Claimant upon submission.

## Notice Details

Insurer Name:

**GREAT LAKES INSURANCE SE**

\* Make sure to reference the declarations page on the insurance policy to confirm the legal name of the insurance company. If you are unsure about the correct legal name of the underwriting company, please check with the Secretary of State, Division of Corporations, at www.sunbiz.org, or the Office of Insurance Regulation website at www.companysearch.myfloridacfo.gov to search for an insurer's name.

The Department of Financial Services (Department) does not review entries for accuracy, determine the validity of the allegations, nor verify that the proper insurance company has been selected on the Property Insurance Intent to Initiate Litigation Notice (Notice). This system determines whether a filing is accepted based on whether it contains a response in all required fields necessary to submit a complete Property Insurance Intent to Initiate Litigation Notice. No determination is made as to the legal sufficiency of the information provided by the consumer or their counsel in the submission.

Alleged Acts or Omissions of the Insurer:

**The insurance carrier failed to pay benefits that would restore the property to pre-loss condition.**

This Notice is being provided following alleged acts or omissions by the insurer other than the denial of coverage.

| | |
|---|---|
| Presuit Settlement Demand: | **$83,848.00** |
| Damages: | **$75,848.00** |
| Attorney Fees: | **$7,500.00** |
| Costs: | **$500.00** |
| Disputed Amount: | **UNKNOWN** |

## Attachments

The following documents were included as part of this Notice. Please open this Notice online to review or download these documents.
1. J'Cam 1 SPA Estimate.pdf - PA Estimate

## Property Insurance Notice of Intent to Initiate Litigation

Notice Number: **111246**

Notice Accepted: **5/18/2023 12:11:12 PM**

☑ The submitter hereby states that The Property Insurance Intent to Initiate Litigation Notice is provided pursuant to Section 627.70152, Florida Statutes.

| Claimant (Insured filing suit under a residential or commercial insurance policy) |
|---|
| Name: **J'Cam Investments LLC** |
| Street Address: **2010 SW 6th Street, Unit 3** |
| City, State Zip: **Miami, FL 33135** |
| Email Address: **helenb_2009@yahoo.com** |
| Policy Number: **JTA5002577** |
| Claim Number: **154316** |

| Attorney |
|---|
| Name: **Brittany Quintana Marti** |
| Street Address: **237 S Dixie Highway, Ste 426** |
| City, State Zip: **Coral Gables, FL 33133** |
| Email Address: **bquintana@quintanalawpa.com** |
| Florida Bar #: **98746** |
| Firm Name: **Quintana Law P.A.** |
| Role on Claim: **Represent Insured** |
| * Pursuant to Section 627.70152, Florida Statutes, the Attorney filing this Notice must provide a copy of this Notice to the Claimant. The Claimant's email address is a required field as this Notice will be transmitted to the Claimant upon submission. |

## Notice Details

Insurer Name:

**GREAT LAKES INSURANCE SE**

\* Make sure to reference the declarations page on the insurance policy to confirm the legal name of the insurance company. If you are unsure about the correct legal name of the underwriting company, please check with the Secretary of State, Division of Corporations, at www.sunbiz.org, or the Office of Insurance Regulation website at www.companysearch.myfloridacfo.gov to search for an insurer's name.

The Department of Financial Services (Department) does not review entries for accuracy, determine the validity of the allegations, nor verify that the proper insurance company has been selected on the Property Insurance Intent to Initiate Litigation Notice (Notice). This system determines whether a filing is accepted based on whether it contains a response in all required fields necessary to submit a complete Property Insurance Intent to Initiate Litigation Notice. No determination is made as to the legal sufficiency of the information provided by the consumer or their counsel in the submission.

Alleged Acts or Omissions of the Insurer:

**The insurance carrier failed to pay benefits that would restore the property to pre-loss condition.**

This Notice is being provided following alleged acts or omissions by the insurer other than the denial of coverage.

| | |
|---|---|
| Presuit Settlement Demand: | **$80,242.00** |
| Damages: | **$72,242.00** |
| Attorney Fees: | **$7,500.00** |
| Costs: | **$500.00** |
| Disputed Amount: | **UNKNOWN** |

## Attachments

The following documents were included as part of this Notice. Please open this Notice online to review or download these documents.
1. PA Estimate.pdf - PA Estimate

# EXHIBIT "B"

RENEWAL OF JTA5000132



Johnson&Johnson
*The Experience of the Past with a Vision for the Future*

**POLICY NUMBER:** JTA5002577
**TRANSACTION TYPE:  RENEWAL**

## COMMON POLICY DECLARATIONS

**NAMED INSURED AND MAILING ADDRESS:**

J'CAM INVESTMENTS LLC
7915 SW 17 TERRACE
MIAMI, FL 33155

This Certificate of Insurance is issued in accordance with the authorization granted under Contract No. 3903 undersigned by GREAT LAKES INSURANCE SE, herein after called "The Company".

**POLICY PERIOD: From 02/26/2021 to 02/26/2022 at 12:01 AM Standard Time at your mailing address shown above**
**BUSINESS DESCRIPTION:** APARTMENTS

| FORM OF BUSINESS | | | | | |
|---|---|---|---|---|---|
| ☐ Individual | ☐ Partnership | ☐ Joint Venture | ☐ Trust | | ☐ Corporation |
| ☒ Limited Liability Company | ☐ Estate | ☐ Other: | | | |

### IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| | |
|---|---|
| Commercial Property Coverage Part | $4,750.00 |
| Commercial General Liability Coverage Part | $840.00 |
| Wind Deductible Buy Back | NOT COVERED |
| Commercial Inland Marine Coverage Part | NOT COVERED |
| Commercial Ocean Marine Coverage Part | NOT COVERED |
| Commercial Professional Liability Coverage Part | NOT COVERED |
| Commercial Automobile Liability Coverage Part | NOT COVERED |
| Liquor Liability Coverage Part | NOT COVERED |
| Equipment Breakdown | NOT COVERED |
| Crime Coverage Part | NOT COVERED |
| Other Coverages: | NOT COVERED |

| | | |
|---|---|---|
| | **PREMIUM TOTAL** | **$5,590.00** |
| | INSPECTION FEE | $100.00 |
| | POLICY FEE | $85.00 |
| | EMPA FEE | $4.00 |
| | STAMPING FEE | $3.47 |
| | STATE TAX | $285.29 |
| | **GRAND TOTAL** | **$6,067.76** |

**This Insurance Is issued pursuant to the Florida Surplus Lines Law. Persons Insured by surplus lines carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer.**

SURPLUS LINES LICENSEE:
Francis G Johnson
200 Wingo Way, Suite 200
Mount Pleasant SC 29464
**LICENSE #: W189190**

GLK 1000 IL 06 09

Page 1 of 2

**Great Lakes 0486**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**AGENT:**
JOHNSON & JOHNSON
PO BOX 899
CHARLESTON, SC  29402

Inspection Ordered:     Yes  [X]     No  [ ]

**RETAIL PRODUCER CODE:**     840019

**NAME AND ADDRESS:**     AVANTE INSURANCE AGENCY, INC.(RAIS)
7490 WEST FLAGLER STREET
MIAMI, FL 33144-2402

| ENDORSEMENTS |
|---|
| Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue: |
| **SEE SCHEDULE OF FORMS AND ENDORSEMENTS** |

**These declarations, together with the Common Policy Conditions and Coverage Form(s) and any Endorsement(s),
complete the above numbered policy.**

Countersigned:     02/27/2021     By: _Francis A. Johnson_

**DATE**     **AUTHORIZED REPRESENTATIVE**

GLK 1000 IL 06 09     Page 2 of 2

**Great Lakes 0487**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No: JTA5002577                                          Effective Date: 02/26/2021 12:01 A.M. Standard Time

Named Insured: J'CAM INVESTMENTS LLC

| **COMMON FORMS** | |
|---|---|
| EVIDENCE OF INSURANCE 02-16 | FLORIDA EVIDENCE OF INSURANCE |
| IL 09 53 01-15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| IL 02 55 03-16 | FLORIDA CHANGES - CANCELLATION AND NONRENEWAL |
| GLK 1000 IL 06-09 | COMMON DECLARATIONS |
| GLK 4030 IL | SCHEDULE OF FORMS AND ENDORSEMENTS |
| REF 1998 M-S 05-12 | SERVICE OF SUIT (U.S.A.) |
| IL 00 17 11-98 | COMMON POLICY CONDITIONS |
| GLK 3006 IL 02-20 | COMBINATION ENDORSEMENT |
| GLK 3003 IL 01-19 | GLISE NOTICE TO POLICYHOLDER |
| REF2920 a | TERRORISM EXCLUSION |
| GLK 4118 04-17 | CONFORMITY OF TERMS |
| GLK 4014 IL 06-09 | MINIMUM EARNED PREMIUM ENDORSEMENT |
| IL 01 75 09-07 | FLORIDA CHANGES - LEGAL ACTION AGAINST US |
| IL 00 21 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| GLISE(I) 09-20 | GREAT LAKES INSURANCE SE PRIVACY POLICY STATEMENT |
| Security Endorsement | SECURITY ENDORSEMENT |
| **GENERAL LIABILITY FORMS** | |
| CG 00 01 04-13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION |
| CG 02 20 03-12 | FLORIDA CHANGES - CANCELLATION AND NONRENEWAL |
| CG 21 01 11-85 | ATHLETIC OR SPORTS PARTICIPANTS EXCLUSION |
| CG 21 07 05-14 | EXCLUSION - ACCESS OR DISCLOSURE OF INFO AND DATA-RELATED |
| CG 21 16 04-13 | EXCLUSION - DESIGNATED PROFESSIONAL SERVICES |
| CG 21 32 05-09 | COMMUNICABLE DISEASE EXCLUSION |
| CG 21 39 10-93 | CONTRACTUAL LIABILITY LIMITATION ENDORSEMENT |
| CG 21 44 04-17 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION |
| CG 21 47 12-07 | EMPLOYMENT RELATED PRACTICES EXCLUSION |
| CG 21 49 09-99 | TOTAL POLLUTION EXCLUSION |
| CG 21 67 12-04 | FUNGI OR BACTERIA EXCLUSION |
| CG 21 73 01-15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| CG 21 96 03-05 | SILICA OR SILICA-RELATED DUST EXCLUSION |
| CG 24 26 04-13 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG 40 15 12-19 | CANNABIS EXCLUSION WITH HEMP EXCEPTION |

GLK 4030 IL

**Great Lakes 0488**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No: JTA5002577                                    Effective Date: 02/26/2021 12:01 A.M. Standard Time

Named Insured: J'CAM INVESTMENTS LLC

| | |
|---|---|
| GLK 1001 GL | GL DECLARATIONS |
| GLK 4002 GL 08-09 | ASBESTOS EXCLUSION |
| GLK 4007 GL 08-09 | EARTH MOVEMENT EXCLUSION |
| GLK 4010 GL 04-12 | LEAD CONTAMINATION EXCLUSION |
| GLK 4016 GL 08-09 | MOLESTATION OR ABUSE EXCLUSION |
| GLK 4017 GL 9-Aug | PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION |
| GLK 4031 GL 06-09 | ANIMAL EXCLUSION |
| **PROPERTY FORMS** | |
| CP 00 10 10-12 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM |
| CP 00 30 10-12 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |
| CP 00 90 07-88 | COMMERCIAL PROPERTY CONDITIONS |
| CP 01 25 02-12 | FLORIDA CHANGES |
| CP 01 40 07-06 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| CP 04 11 10-12 | PROTECTIVE SAFEGUARDS |
| CP 10 30 10-12 | CAUSES OF LOSS – SPECIAL FORM |
| CP 10 33 10-12 | THEFT EXCLUSION |
| GLK 1003 PR 01-10 | PROPERTY DECLARATIONS |
| GLK 4040 PR 08-09 | FUNGUS, WET ROT, DRY ROT, AND BACTERIA EXCLUSION |
| GLK 4042 PR 01-10 | WIND OR HAIL DEDUCTIBLE |
| GLK 4048 PR 01-10 | CONSTRUCTIVE TOTAL LOSS |
| IL 09 35 07-02 | EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES |

GLK 4030 IL

Great Lakes 0489
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**POLICY NUMBER: JTA5002577**                                    COMMERCIAL GENERAL LIABILITY
**RENEWAL OF JTA5000132**

## COMMERCIAL GENERAL LIABILITY DECLARATIONS

| COMPANY NAME | PRODUCER NAME AND MAILING ADDRESS |
|---|---|
| GREAT LAKES INSURANCE SE | JOHNSON & JOHNSON, INC. |
| CONTRACT 3903 | 200 WINGO WAY |
| 10 Fenchurch Avenue | SUITE 200 |
| LondonEC3M 5BN, 0 | MOUNT PLEASANT, SC  29464 |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | INCLUDED | |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | Any one person or organization |
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $100,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $5,000 | Any one person |

### DESCRIPTION OF BUSINESS

**FORM OF BUSINESS:** LIMITED LIABILITY CORPORATION (LLC)

**BUSINESS DESCRIPTION:** APARTMENTS

### ALL PREMISES YOU OWN, RENT OR OCCUPY

| LOCATION/BUILDING NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
|---|---|
| 1 / 1 | 2010 SW 6th St  Miami, FL 33135 |

### CLASSIFICATIONS AND PREMIUMS

| LOC/BLDG NO | CLASSIFICATION | BASIS | EXPOSURE | RATE Prem/Ops | RATE Prod Comp Ops | ADVANCE PREMIUM Prem/Ops | ADVANCE PREMIUM Prod Comp Ops |
|---|---|---|---|---|---|---|---|
| 1 / 1 | 60010 – Apartment Buildings | Units | 6 | 139.920 | INCL | $840 | INCL |

| | |
|---|---|
| ADVANCE PREMIUM DUE AND PAYABLE AT INCEPTION (SUBJECT TO AUDIT) | $840 |
| MINIMUM RETAINED AUDIT PREMIUM | $840 |
| MINIMUM RETAINED PREMIUM | $210 |

AUDIT PERIOD (IF APPLICABLE)      [X] ANNUALLY      [ ] SEMI-ANNUALLY      [ ] QUARTERLY      [ ] MONTHLY

### FORMS AND ENDORSEMENTS

SEE FORMS SCHEDULE

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

Great Lakes 0490
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01



## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

### DESCRIPTION OF PREMISES

| Prem No. | Bldg No. | Location Address | No. of Stories | Year Built | Protection Class | Construction |
|----------|----------|------------------|----------------|------------|------------------|--------------|
| 1 | 1 | 2010 SW 6th St<br>Miami, FL 33135<br>COUNTY: MIAMI-DADE | 2 | 1974 | 1 | JOISTED MASONRY |

**Class Code - Class Description**

0311 - Apartments without Mercantile Occupancies - Up to 10 Units

### COVERAGES PROVIDED - Insurance at the described premises applies only for coverages for which a limit of insurance is shown.

| Prem No. | Bldg No. | Coverage | Limit of Insurance | Covered Cause of Loss | Valuation | Co-insurance | Rate | Premium |
|----------|----------|----------|--------------------|-----------------------|-----------|--------------|------|---------|
| 1 | 1 | BUILDING | $350,000 | SPECIAL EXCLUDING THEFT | RCV | 80% | 1.250 | $4,375 |

Business Income Indemnity Options:    Monthly Indemnity:

Deductible:    $1,000  [X]  EXCEPTION:    Wind/Hail: 5% Wind and Hail Subject to $5,000 Minimum

| Prem No. | Bldg No. | Coverage | Limit of Insurance | Covered Cause of Loss | Valuation | Co-insurance | Rate | Premium |
|----------|----------|----------|--------------------|-----------------------|-----------|--------------|------|---------|
| 1 | 1 | BUSINESS INCOME WITH EXTRA EXPENSE | $30,000 | SPECIAL EXCLUDING THEFT | | | 1.250 | $375 |

Business Income Indemnity Options:    Monthly Indemnity:    1/3

Deductible:    [ ]  EXCEPTION:

**FORMS AND ENDORSEMENTS:** SEE SCHEDULE OF FORMS AND ENDORSEMENTS

**TOTAL PREMIUM FOR THIS COVERAGE PART: $4,750**

These Declarations, together with the Common Policy Conditions and Coverage Form(s) and any Endorsement(s), complete the above numbered policy.

Great Lakes 0491

J'Cam Invs. LLC v. Great Lakes Ins. SE

Case No. 2023-001067-CA-01

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

© Insurance Services Office, Inc., 2011

Great Lakes 0492
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2. **Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

  **(1)** The lowest basement floor; or

  **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

  **(1)** Are licensed for use on public roads; or

  **(2)** Are operated principally away from the described premises.

  This paragraph does not apply to:

  **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

© Insurance Services Office, Inc., 2011

CP 00 10 10 12

**Great Lakes 0493**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

(b) Vehicles or self-propelled machines, other than autos, you hold for sale;

(c) Rowboats or canoes out of water at the described premises; or

(d) Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

q. The following property while outside of buildings:

(1) Grain, hay, straw or other crops;

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

## 3. Covered Causes Of Loss

See applicable Causes Of Loss form as shown in the Declarations.

## 4. Additional Coverages

### a. Debris Removal

(1) Subject to Paragraphs (2), (3) and (4), we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

(b) Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

(c) Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

(d) Remove property of others of a type that would not be Covered Property under this Coverage Form;

(e) Remove deposits of mud or earth from the grounds of the described premises;

(f) Extract "pollutants" from land or water; or

(g) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

(4) We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

**Great Lakes 0494**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

### (5) Examples

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | | |
|---|---|---|
| Limit of Insurance: | $ | 90,000 |
| Amount of Deductible: | $ | 500 |
| Amount of Loss: | $ | 50,000 |
| Amount of Loss Payable: | $ | 49,500 |
| | ($50,000 – $500) | |
| Debris Removal Expense: | $ | 10,000 |
| Debris Removal Expense Payable: | $ | 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | | |
|---|---|---|
| Limit of Insurance: | $ | 90,000 |
| Amount of Deductible: | $ | 500 |
| Amount of Loss: | $ | 80,000 |
| Amount of Loss Payable: | $ | 79,500 |
| | ($80,000 – $500) | |
| Debris Removal Expense: | $ | 40,000 |
| Debris Removal Expense Payable | | |
|     Basic Amount: | $ | 10,500 |
|     Additional Amount: | $ | 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

### b. Preservation Of Property

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

### c. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

© Insurance Services Office, Inc., 2011

CP 00 10 10 12
Great Lakes 0495
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.**(3) through **e.**(9) of this Additional Coverage.

(3) The ordinance or law referred to in **e.**(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

  (a) You were required to comply with before the loss, even when the building was undamaged; and

  (b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

  (a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

  (b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

  (a) We will not pay for the Increased Cost of Construction:

    (i) Until the property is actually repaired or replaced at the same or another premises; and

    (ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

© Insurance Services Office, Inc., 2011

**Great Lakes 0496**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss — Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss — Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**Great Lakes 0497**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**Great Lakes 0498**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss — Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss — Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011       CP 00 10 10 12

**Great Lakes 0499**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

   (a) The trailer is used in your business;

   (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

   (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

   (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

   (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

   (a) Will end 90 days after the business personal property has been placed in the storage unit;

   (b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

**Great Lakes 0500**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;

2. Pollutant Clean-up And Removal;

3. Increased Cost Of Construction; and

4. Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Building 1: | $ | 60,000 |
| Limit of Insurance – Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
–    250
$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | | |
|---|---|---|
| Loss to Building 1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building 2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable – Building 1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable – Building 2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

1. **Abandonment**

There can be no abandonment of any property to us.

2. **Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

© Insurance Services Office, Inc., 2011

**Great Lakes 0501**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

© Insurance Services Office, Inc., 2011

Great Lakes 0502
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

**Great Lakes 0503**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety-glazing material if required by law.

e. Tenants' Improvements and Betterments at:

(1) Actual cash value of the lost or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

## F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | | $250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is: | | 80% |
| | The Limit of Insurance for it is: | | $100,000 |
| | The Deductible is: | $ | 250 |
| | The amount of loss is: | $ | 40,000 |

Step (1): $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $100,000 ÷ $200,000 = .50

Step (3): $40,000 x .50 = $20,000

Step (4): $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | | $250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is: | | 80% |
| | The Limit of Insurance for it is: | | $200,000 |
| | The Deductible is: | $ | 250 |
| | The amount of loss is: | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

Great Lakes 0504
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When: The value of the property is:

| | |
|---|---|
| Building at Location 1: | $ 75,000 |
| Building at Location 2: | $ 100,000 |
| Personal Property at Location 2: | $ 75,000 |
| | $ 250,000 |

The Coinsurance percentage for it is: 90%

The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: $ 180,000

The Deductible is: $ 1,000

The amount of loss is:

| | |
|---|---|
| Building at Location 2: | $ 30,000 |
| Personal Property at Location 2: | $ 20,000 |
| | $ 50,000 |

Step **(1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 ÷ $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 − $1,000 = $39,000

We will pay no more than **$39,000.** The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**Great Lakes 0505**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**


**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

  (1) On or after the effective date of this Optional Coverage; and

  (2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

### 2. Inflation Guard

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

  (1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

  (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

  (3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

### Example

If: The applicable Limit of Insurance is: $ 100,000

The annual percentage increase is: 8%

The number of days since the beginning of the policy year (or last policy change) is: 146

The amount of increase is: $100,000 x .08 x 146 ÷ 365 = $ 3,200

### 3. Replacement Cost

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

  (1) Personal property of others;

  (2) Contents of a residence;

  (3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

  (4) "Stock", unless the Including "Stock" option is shown in the Declarations.

  Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

  (1) Until the lost or damaged property is actually repaired or replaced; and

  (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

  With respect to tenants' improvements and betterments, the following also apply:

  (3) If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

  (4) We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

  (1) The Limit of Insurance applicable to the lost or damaged property;

  (2) The cost to replace the lost or damaged property with other property:

    (a) Of comparable material and quality; and

    (b) Used for the same purpose; or

  (3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

  If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

Great Lakes 0506
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**Great Lakes 0507**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon:
Mr. Edward Smith
Mendes and Mount, LLP
750 Seventh Avenue
New York, NY  10019-6829
USA
and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

24/4/86 (Rev. 15/05/2012)
REF1998-M-S

**Great Lakes 0508**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

     No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**Great Lakes 0509**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**Great Lakes 0510**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**Great Lakes 0511**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**Great Lakes 0512**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

© Insurance Services Office, Inc., 2012

Great Lakes 0513
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012   CG 00 01 04 13

**Great Lakes 0514**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

### l. Unauthorized Use Of Another's Name Or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

### m. Pollution

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

### n. Pollution-related

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

### o. War

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### p. Recording And Distribution Of Material Or Information In Violation Of Law

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**Great Lakes 0515**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

   **(1)** On premises you own or rent;

   **(2)** On ways next to premises you own or rent; or

   **(3)** Because of your operations;

   provided that:

     **(a)** The accident takes place in the "coverage territory" and during the policy period;

     **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

     **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   **(1)** First aid administered at the time of an accident;

   **(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

   **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**Great Lakes 0516**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**Great Lakes 0517**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

Great Lakes 0518
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**Great Lakes 0519**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

### b. Excess Insurance

(1) This insurance is excess over:

  (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

    (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    (ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    (iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

    (iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

  (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

  (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

  (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## 5. Premium Audit

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

Great Lakes 0520
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

      **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

      **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

      **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

      provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**Great Lakes 0521**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

9. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** Power cranes, shovels, loaders, diggers or drills; or

   **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

**Great Lakes 0522**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

**Great Lakes 0523**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

**Great Lakes 0524**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ☐

Great Lakes 0525
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

Great Lakes 0526
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

       Copyright, ISO Properties, Inc., 2007       IL 00 21 09 08

**Great Lakes 0527**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**IL 01 75 09 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES - LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

      CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
      COMMERCIAL INLAND MARINE COVERAGE PART
      COMMERCIAL PROPERTY COVERAGE PART
      EQUIPMENT BREAKDOWN COVERAGE PART
      FARM COVERAGE PART

The following replaces the second paragraph of the **Legal Action Against Us** Condition:

**LEGAL ACTION AGAINST US**

Legal action against us involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs.

**Great Lakes 0528**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**TERRORISM EXCLUSION**

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

But, if the act of terrorism occurs in an "Exception State" and results in fire, we will pay for the loss or damage in such "Exception State" caused by that fire, but only to the extent, if any, required by the applicable Standard Fire Policy statute(s) in such state. However, this exception applies only to direct loss or damage by fire to covered property and not to any insurance provided for time element coverages, including but not limited to business interruption and extra expense. In no event shall this policy be construed to give coverage beyond the minimum requirements of the applicable Standard Fire Policy Statute (and amendments thereto) in existence as of the effective date of the policy and governing such requirements with respect to any acts of terrorism. If the applicable law or regulation in any state permits the Commissioner or Director of Insurance or anyone in a similar position to grant the insurer approval to vary the terms and conditions of the Standard Fire Policy, and such approval has been granted in that state as of the effective date of this policy, this policy shall not provide coverage beyond the minimum requirements of the terms and conditions approved by the Commissioner or Director of Insurance or person in a similar position.

"Exception state" means a state which at the time of policy effective date, requires that the coverage provided under this policy meet or exceed coverage provided under a Standard Fire Policy.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorist exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy, such as losses excluded by a Nuclear Hazard Exclusion or a war exclusion.

All other terms and conditions remain unchanged.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

REF2920a

## GREAT LAKES INSURANCE SE PRIVACY POLICY STATEMENT

Great Lakes Insurance SE want you to know how we protect the confidentiality of your non-public personal information.  We want you to know how and why we use and disclose the information that we have about you.  The following describes our policies and practices for securing the privacy of our current and former customers.

Full details can be found at: https://www.munichre.com/en/company/about-munich-re/munich-re-worldwide/united-kingdom/great-lakes-uk.html

### INFORMATION WE COLLECT

The non-public personal information that we collect about you includes, but is not limited to:

- Information contained in applications or other forms that you submit to us, such as name, address, and social security number

- Information about your transactions with our affiliates or other third-parties, such as balances and payment history

- Information we receive from a consumer-reporting agency, such as credit-worthiness or credit history

### INFORMATION WE DISCLOSE

We disclose the information that we have when it is necessary to provide our products and services.  We may also disclose information when the law requires or permits us to do so.

### CONFIDENTIALITY AND SECURITY

Only our employees and others who need the information to service your account have access to your personal information.  We have measures in place to secure our paper files and computer systems.

### DATA SUBJECT RIGHTS

You have a right to request access to your personal data, to have your personal data removed or deleted, or corrected, to restrict processing where your personal data is inaccurate or the processing is unlawful, or transfer your personal data to another Data Controller.  Please contact the Data Protection Officer at the address below.

### CONTACTING US

If you have any questions about this privacy notice or would like to learn more about how we protect your privacy, please write to us at the following address:

Great Lakes Insurance SE

10 Fenchurch Avenue,

London,

EC3M 5BN

GLISE(i)(09.2020)

**Great Lakes 0530**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

COMMERCIAL GENERAL LIABILITY
CG 02 20 03 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **2. Cancellation Of Policies In Effect**

    **a. For 90 Days Or Less**

    If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

      **(a)** A material misstatement or misrepresentation; or

      **(b)** A failure to comply with the underwriting requirements established by the insurer.

    **b. For More Than 90 Days**

    If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

    **(1)** Nonpayment of premium;

    **(2)** The policy was obtained by a material misstatement;

    **(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

    **(4)** A substantial change in the risk covered by the policy; or

    **(5)** The cancellation is for all insureds under such policies for a given class of insureds.

    If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

      **(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      **(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **3.** We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

**Great Lakes 0531**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

    **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

    If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

    **1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

    **2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2011
CG 02 20 03 12

**Great Lakes 0532**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

POLICY NUMBER:  JTA5002577

**COMMERCIAL PROPERTY**
**CP 04 11 10 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|:---:|:---:|:---:|
| 1 | 1 | P-9 |

| Describe Any "P-9": |
|---|
| SMOKE DETECTORS & FIRE EXTINGUISHER |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to the Commercial Property **Conditions:**

**Protective Safeguards**

**1.** As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

**2.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" Automatic Sprinkler System,** including related supervisory services.

Automatic Sprinkler System means:

**a.** Any automatic fire protective or extinguishing system, including connected:

(1) Sprinklers and discharge nozzles;

(2) Ducts, pipes, valves and fittings;

(3) Tanks, their component parts and supports; and

(4) Pumps and private fire protection mains.

**b.** When supplied from an automatic fire protective system:

(1) Non-automatic fire protective systems; and

(2) Hydrants, standpipes and outlets.

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

© Insurance Services Office, Inc., 2011

**Great Lakes 0533**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

**a.** Hood:

**b.** Grease removal device;

**c.** Duct system; and

**d.** Wet chemical fire extinguishing equipment.

**"P-9",** the protective system described in the Schedule.

**Great Lakes 0534**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss – Basic Form
Causes Of Loss – Broad Form
Causes Of Loss – Special Form
Mortgageholders Errors And Omissions Coverage Form
Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

**1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

**2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**Great Lakes 0535**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

COMMERCIAL PROPERTY
CP 10 30 10 12

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance Or Law

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

### b. Earth Movement

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

© Insurance Services Office, Inc., 2011

Great Lakes 0536
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

© Insurance Services Office, Inc., 2011   CP 10 30 10 12

**Great Lakes 0537**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

Great Lakes 0538
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

© Insurance Services Office, Inc., 2011  **CP 10 30 10 12**

**Great Lakes 0539**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.**, Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**Great Lakes 0540**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(2)** Changes in or extremes of temperature;

**(3)** Disease;

**(4)** Frost or hail; or

**(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(1)** Glass; or

**(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

© Insurance Services Office, Inc., 2011   CP 10 30 10 12

**Great Lakes 0541**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

**3.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage — Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(1)** A cause of loss listed in **2.a.** or **2.b.;**

**(2)** One or more of the "specified causes of loss";

**(3)** Breakage of building glass;

**(4)** Weight of people or personal property; or

**(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage — Collapse** does **not** apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

Great Lakes 0542

J'Cam Invs. LLC v. Great Lakes Ins. SE

Case No. 2023-001067-CA-01

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

    (1) Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

    (2) The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

© Insurance Services Office, Inc., 2011

CP 10 30 10 12

**Great Lakes 0543**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.**, applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

**a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

© Insurance Services Office, Inc., 2011

Great Lakes 0544
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

© Insurance Services Office, Inc., 2011

**Great Lakes 0545**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

# ANIMAL EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Paragraph **2. Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY:**

2. **Exclusions**
   This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury":

   a.   Arising out of domestic or wild animals, including but not limited to mammals, reptiles, insects, birds, or fish.

**Great Lakes 0546
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01**

# FUNGUS, WET ROT, DRY ROT, AND BACTERIA EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> **CAUSES OF LOSS – BASIC FORM**
> **CAUSES OF LOSS - BROAD FORM**
> **CAUSES OF LOSS – SPECIAL FORM**

**A.** **Exclusion** titled **"Fungus", Wet Rot, Dry Rot And Bacteria** and **Additional Coverage – Limited Coverage For "Fungus, Wet Rot, Dry Rot and Bacteria** are deleted.

**B.** The following is added to **Exclusions**:
    We will not pay for loss or damage caused by or resulting from "fungus", wet rot, dry rot, or bacteria.

GLK 4040 PR 08 09                                                                 Page 1 of 1

**Great Lakes 0547**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**POLICY NUMBER:** JTA5002577

# WIND OR HAIL DEDUCTIBLE
## (PER ITEM PERCENTAGE)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> **BUILDERS RISK COVERAGE FORM**
> **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
> **CONDOMINIUM ASSOCIATION COVERAGE FORM**
> **CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM**

With respect to the perils of wind and/or hail, item **D. Deductible** is <u>deleted</u> and is <u>replaced</u> by the following:

**D. Deductible**

In any one occurrence of loss or damage to covered property by wind or hail (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the <u>percentage</u> as shown in the Schedule below of the Limit(s) of Insurance applicable to the property that has sustained loss or damage, <u>subject to a minimum deductible</u>, shown in the Schedule below:

| | | | SCHEDULE | |
|---|---|---|---|---|
| Prem.<br>No. | Bldg.<br>No. | Percentage<br>Deductible | Subject to a $<br>Minimum Deductible | |
| 1 | 1 | 5% | Subject to $5,000 | |

The Wind or Hail Deductible is calculated separately for, and applies separately to:

1. Each building that sustains loss or damage;

2. The building and to personal property in that building, if both sustain loss or damage;

3. Personal property at each building, if that personal property sustains loss or damage;

4. Personal property in the open;

5. Each separately scheduled item.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**Great Lakes 0548**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

# CONSTRUCTIVE TOTAL LOSS

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

In the event of a total loss or a "constructive total loss" of the Covered Property, the premium for that Covered Property will be fully earned and no refund will be made.

For the purposes of this endorsement the following is added to the **Definitions** section:

"Constructive total loss" means Covered Property that is damaged and is treated as a total loss because the cost of repairing the damaged Covered Property exceeds the value of the Covered Property.

**Great Lakes 0549**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

# CONFORMITY OF TERMS ENDORSEMENT

For the purposes of this insurance:

1) Any reference herein to Underwriter(s), Company(ies) or We is deemed to mean **Insurer(s).**

2) Any reference herein to Certificate is deemed to mean **Policy.**

3) Any reference herein to Named Assured, Assured or Insured is deemed to mean **Insured.**

4) Any reference herein to US$, $ or USD shall be deemed to mean **US Dollars.**

5) The reference LPO, NMA, LMA and REF are **synonymous.**

GLK 4118 IL 04 17                                                                                     Page 1 of 1

**Great Lakes 0550**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

# NOTICE TO POLICYHOLDER
# GREAT LAKES INSURANCE SE

POLICY NUMBER: JTA5002577

This contract of insurance is based upon the information and representations you provided in your application.  Depending on the type of information and representations that you provided, the proposed contract of insurance includes certain conditions and/or warranties.  Kindly review all the contract of insurance documentation, including any binder, declarations page, policy forms, and endorsements, to familiarize yourself with any conditions and/or warranties included in the contract of insurance.  These conditions and/or warranties may require you to take specific actions, to refrain from taking specific actions, to fulfill certain requirements, and/or to verify specific facts.

Please be advised that strict compliance with the conditions and/or warranties contained in the contract of insurance is required.  If you do not strictly comply with the conditions and/or warranties contained within the contract of insurance, then the insurer, Great Lakes Insurance SE, may deny or limit coverage for any claim submitted by you under the contract of insurance.

Should you have an enquiry or wish to make a complaint or dispute concerning your policy or about a claim regarding the coverage under this Policy, you may do so either in writing or verbally to:

<div align="center">

Johnson & Johnson
P.O. Box 899
Charleston, SC 29402

</div>

GLK 3003 IL 01 19

**Great Lakes 0551**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

## COMBINATION ENDORSEMENT

| The following Provisions Are Contained in this Combination Endorsement. | | | |
|---|---|---|---|
| REF 1191 | Radioactive Contamination Exclusion Clause – Physical Damage – Direct (U.S.A.) | REF 464 | War and Civil War Exclusion Clause |
| REF 1477 | Radioactive Contamination Exclusion Clause – Liability Direct (U.S.A.) | REF 5021 | Applicable Law (U.S.A.) |
| REF 2342 | Seepage and/or Pollution and/or Contamination Exclusion | REF 5062 (Amended) | Fraudulent Claim Clause |
| REF 2962 | Biological or Chemical Material Exclusion | REF 5401 | Property Cyber and Data Exclusion |
| REF 3100 | Sanction Limitation and Exclusion Clause | | |

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE - PHYSICAL DAMAGE – DIRECT (U.S.A.)

This Policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination; however, such nuclear reaction, nuclear radiation or radioactive contamination may have been cause. *NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination, any loss or damage arising directly from that Fire shall (subject to the provisions of this Policy) be covered EXCLUDING however, all loss or damage caused by nuclear reaction, nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

* NOTE – If Fire is not an insured peril under this Policy the words "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

REF 1191
7/5/59

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE LIABILITY DIRECT (U,S,A,)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause – Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or

GLK 3006 IL 02 20                                                                                    Page 1 of 5

**Great Lakes 0552**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

contributed to by or arising from ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

REF1477
13/2/64

## SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:

**(a)**   any loss, damage, cost or expense, or

**(b)**   any increase in insured loss, damage, cost or expense, or

**(c)**   any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this Endorsement includes (but is not limited to):

**(a)**   seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

**(b)**   the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

REF 2342
24/11/98

GLK 3006 IL 02 20                                                                          Page 2 of 5

**Great Lakes 0553**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

## BIOLOGICAL OR CHEMICAL MATERIAL EXCLUSION

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical material regardless of any other cause or event contributing concurrently or in any other sequence thereto.

REF2962
06/02/03

## SANCTION LIMITATION AND EXCLUSION CLAUSE

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

REF 3100
15/9/10

## WAR AND CIVIL WAR EXCLUSION CLAUSE

Notwithstanding anything to the contrary contained herein, this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

REF464
11/1/38

Great Lakes 0554
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

## APPLICABLE LAW (U.S.A.)

This Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (U.S.A.)

REF 5021
14/9/05

## FRAUDULENT CLAIM CLAUSE

If the (re)insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

REF 5062 (Amended)
14/9/06

## PROPERTY CYBER AND DATA EXCLUSION

1    Notwithstanding any provision to the contrary within this Policy or any endorsement thereto this Policy excludes any:

    1.1    Cyber Loss;

    1.2    loss, damage, liability, claim, cost, expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any loss of use, reduction in functionality, repair, replacement, restoration or reproduction   of any Data, including any amount pertaining to the value of such Data;

regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2    In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

3    This endorsement supersedes and, if in conflict with any other wording in the Policy or any endorsement thereto having a bearing on Cyber Loss or Data, replaces that wording.

### Definitions

4    Cyber Loss means any loss, damage, liability, claim, cost or expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any Cyber Act or Cyber Incident including, but not limited to, any action taken in controlling, preventing, suppressing or remediating any Cyber Act or Cyber Incident.

5    Cyber Act means an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof involving access to, processing of, use of or operation of any Computer System.

**Great Lakes 0555**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

6    Cyber Incident means:

    6.1    any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any Computer System; or

    6.2    any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any Computer System.

7    Computer System means:

7.1    any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility, owned or operated by the Insured or any other party.

8    Data means information, facts, concepts, code or any other information of any kind that is recorded or transmitted in a form to be used, accessed, processed, transmitted or stored by a Computer System.

REF 5401
11/11/19
G:\BC-FORMS\_COMMERCIAL

    

**Great Lakes 0556**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

# ASBESTOS EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.**   The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Paragraph **2. Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

   **2.   Exclusions**
   This insurance does not apply to:
   a.   "Bodily injury"  arising out of the actual, alleged, threatened, or suspected inhalation, ingestion, or physical exposure to asbestos, or to goods, products, or structures containing asbestos; or
   b.   "Bodily injury" or "property damage" arising out of:
      i.   The use of asbestos or products containing asbestos in construction or manufacturing any good, product or structure; or
      ii.   The manufacture, transportation, storage, service, installation, use, sales, mining, distribution, abatement, removal, clean up or disposal of asbestos or goods, products, or structures containing asbestos; or
   c.   Any loss, cost, or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, or disposing of, or in any way responding to or assessing the effects of asbestos, by any insured or by any other person or entity.

**Great Lakes 0557**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

# EARTH MOVEMENT EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

      **COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** and to Paragraph **2. Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY:**

**2.** Exclusions
This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" caused by, arising from, resulting from, attributable or contributed to, or aggravated by earth movement, whether combined with water or not, including but not limited to earthquakes, landslides, subsidence, mudflow, sinkhole, erosion, or the sinking, rising, shifting, expanding or contracting of earth or soil.

This exclusion applies regardless of the cause or causes of the earth movement.

**Great Lakes 0558**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

# LEAD CONTAMINATION – EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

    **GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2., Exclusions** of SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, to Paragraph **2. Exclusions** of SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY:

  **2. Exclusions**

  This insurance does not apply to:

    a. "Bodily injury" arising out of the ingestion, inhalation, or absorption of lead in any form; or

    b. "Property damage" arising from any form of lead; or

    c. Any loss, cost, or expense arising out of any request, demand, order or statutory regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

    d. Any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

**Great Lakes 0559**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

# MINIMUM EARNED PREMIUM ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

If you request cancellation of this policy, we will retain  25  % of the premium or $_____, whichever is greater.  Cancellation for nonpayment of premium is considered a request by the first Named Insured for cancellation of this policy.

GLK 4014 IL 06 09

Page 1 of 1

**Great Lakes 0560**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

# MOLESTATION OR ABUSE EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Paragraph **2 .Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of:

a.  The threatened or actual molestation or abuse of any person by:
  i.  Any insured;
  ii.  Any "executive officer", director, or trustee of any insured;
  iii.  Any "employee" of any insured;
  iv.  Any "volunteer worker" for any insured, or
  v.  Any other person for whom any insured may be legally liable.

b.  The employment, investigation, supervision, reporting to the proper authorities, or failure to so report; of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph a. above.

Molestation or abuse includes, but is not limited to, harmful physical contact, sexual action, or emotional injury resulting from harmful physical contact or sexual action.  Sexual action includes, but is not limited to:

a.  Interaction with a person which is objectively considered sexually oriented or motivated including physical touching;
b.  Nudity;
c.  Exposure to written, audio, video, or electronic material with sexual content
d.  Exposure to sexual language or behavior;
e.  Request for sexual activity; or
f.  Any behavior with sexual connotation or purpose whether performed for sexual gratification, discrimination, intimidation, coercion or other reason.

**Great Lakes 0561**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2014

Great Lakes 0562
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

COMMERCIAL GENERAL LIABILITY
CG 21 07 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

CG 21 07 05 14 © Insurance Services Office, Inc., 2013 Page 1 of 1

Great Lakes 0563
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

POLICY NUMBER: JTA5002577

COMMERCIAL GENERAL LIABILITY
CG 21 16 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description Of Professional Services |
|---|
| 1.  ANY AND ALL PROFESSIONAL SERVICES |
| 2. |
| 3. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

Great Lakes 0564
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**SECURITY ENDORSEMENT**

Great Lakes Insurance SE

**RS03903A20**

Property Security (if applicable) Section 1:                   100.0000%

General Liability Security (if applicable) Section 2:          100.0000%

Syndicate breakdown as follows:

Section 1 (per the contract)
100.000%                          Great Lakes Insurance SE
100.000%                          **Total**


Section 2 (per the contract)
100.00%                           Great Lakes Insurance SE
100.00%                           **Total**

IL 02 55 03 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation For Policies In Effect 90 Days Or Less**

**a.** If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with underwriting requirements established by the insurer.

**b.** We may not cancel:

**(1)** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(2)** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

   © Insurance Services Office, Inc., 2015

Great Lakes 0566
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**C.** The following is added to the **Cancellation Common Policy Condition:**

**7. Cancellation For Policies In Effect For More Than 90 Days**

**a.** If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** In the event of failure to comply, within 90 days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

**(4)** There has been a substantial change in the risk covered by the policy;

**(5)** The cancellation is for all insureds under such policies for a given class of insureds;

**(6)** On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(7)** On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

**(8)** The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

**b.** If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium;

**(2)** 45 days before the effective date of cancellation if:

**(a)** Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above, and this policy does not cover a residential structure or its contents; or

**(b)** Cancellation is based on the reason stated in Paragraph **7.a.(8)** above;

**(3)** 120 days before the effective date of cancellation if:

**(a)** Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above; and

**(b)** This policy covers a residential structure or its contents.

**c.** If this policy has been in effect for more than 90 days and covers a residential structure or its contents, we may not cancel this policy based on credit information available in public records.

**D.** The following is added:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

**a.** 45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents, or if nonrenewal is for the reason stated in Paragraph **D.5.**; or

**b.** 120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** We may not refuse to renew this policy:

**a.** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

© Insurance Services Office, Inc., 2015

IL 02 55 03 16

**Great Lakes 0567**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**b.** On the basis of filing of claims for sinkhole loss. However, we may refuse to renew this policy if:

**(1)** The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or

**(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

**c.** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**4.** Notwithstanding the provisions of Paragraph **D.3.,** we may refuse to renew this policy if this policy includes Sinkhole Loss coverage. If we nonrenew this policy for purposes of removing Sinkhole Loss coverage, pursuant to section 627.706, Florida Statutes, we will offer you a policy that includes catastrophic ground cover collapse coverage.

**5.** Notwithstanding the provisions of Paragraph **D.3.,** we may refuse to renew this policy if nonrenewal of some or all of our policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

**E. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property**

**1.** The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

**a.** Except as provided in Paragraph **E.1.b.,** we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

**b.** We may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Material misstatement or fraud related to the claim;

**(3)** We determine that you have unreasonably caused a delay in the repair of the structure; or

**(4)** We have paid the policy limits.

If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel or nonrenew for a reason listed in Paragraph **b.(2), b.(3)** or **b.(4),** we will give you 45 days' notice.

**2.** With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

**3.** With respect to Paragraph **E.2.,** a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

**Great Lakes 0568**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

POLICY NUMBER:   JTA5002577                                                    **IL 09 53 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| CA, ME, MO, OR, WI | Commercial Property Cover Part<br>Commercial Inland Marine Coverage Part<br>(only applies if coverage is included in this policy.) |
| GA, HI, IL, IA, NJ, NY, NC, RI, WA, WV | Commercial Property Cover Part<br>(Only Applies if coverage is included in this policy.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

**IL 09 53 01 15**                     © Insurance Services Office, Inc., 2015                     **Page 1 of 2**

Great Lakes 0569
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**Great Lakes 0570**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

COMMERCIAL GENERAL LIABILITY
CG 21 32 05 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# Communicable Disease Exclusion

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

Great Lakes 0571
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

COMMERCIAL GENERAL LIABILITY
CG 21 39 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINI-TIONS Section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement.

CG 21 39 10 93          Copyright, Insurance Services Office, Inc., 1992          **Page 1 of 1**     □

**Great Lakes 0572**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

POLICY NUMBER: JTA5002577

COMMERCIAL GENERAL LIABILITY
CG 21 44 04 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Premises:** 2010 SW 6th St, Miami, FL 33135 |
| **Project Or Operation:** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01,** the provisions under this Paragraph **A.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II – Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

CG 21 44 04 17                    © Insurance Services Office, Inc., 2016                    **Page 1 of 3**

Great Lakes 0573

J'Cam Invs. LLC v. Great Lakes Ins. SE

Case No. 2023-001067-CA-01

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02,** the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V – Extended Reporting Periods.**

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**Great Lakes 0574**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V – Extended Reporting Periods.**

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**Great Lakes 0575**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

Great Lakes 0576

J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc.,  1998

**Great Lakes 0577**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003

Great Lakes 0578
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

Great Lakes 0579

J'Cam Invs. LLC v. Great Lakes Ins. SE

Case No. 2023-001067-CA-01

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© Insurance Services Office, Inc., 2012

Great Lakes 0580
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

# PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damage also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

GLK 4017 GL 08 09

Page 1 of 1

**Great Lakes 0581**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

POLICY NUMBER:    JTA5002577                                    **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ATHLETIC OR SPORTS PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Description of Operations:**

APARTMENT

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

**CG 21 01 11 85**            Copyright, Insurance Services Office, Inc.,  1984            **Page 1 of 1**       ☐

Great Lakes 0582
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

POLICY NUMBER:   JTA5002577

**COMMERCIAL PROPERTY**
CP 10 33 10 12

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# THEFT EXCLUSION

This endorsement modifies insurance provided under the following:

  CAUSES OF LOSS – SPECIAL FORM

**SCHEDULE**

| Premises Number | Building Number |
|---|---|
| 1 | 1 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the location(s) indicated in the Schedule, the following is added to the **Exclusions** section:

We will not pay for loss or damage caused by or resulting from theft.

But we will pay for:

1. Loss or damage that occurs due to looting at the time and place of a riot or civil commotion; or

2. Building damage caused by the breaking in or exiting of burglars.

And if theft results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Great Lakes 0583
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

COMMERCIAL PROPERTY
CP 00 30 10 12

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

© Insurance Services Office, Inc., 2011

Great Lakes 0584
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

© Insurance Services Office, Inc., 2011

CP 00 30 10 12

**Great Lakes 0585**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

    (a) Used in the construction, alterations or additions; or

    (b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(b) Ends on the earlier of:

    (i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

    (ii) 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

(b) Ends on the earlier of:

    (i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

    (ii) 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

(1) Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

Great Lakes 0586
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

(2) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

(3) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(a) If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

(b) If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

(c) If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(5) This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

6. **Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

a. You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

b. The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

c. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

© Insurance Services Office, Inc., 2011

CP 00 30 10 12

Great Lakes 0587

J'Cam Invs. LLC v. Great Lakes Ins. SE

Case No. 2023-001067-CA-01

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

1. Alterations And New Buildings;

2. Civil Authority;

3. Extra Expense; or

4. Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Appraisal

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

## 2. Duties In The Event Of Loss

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Great Lakes 0588
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**3. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

**(1)** The Net Income of the business before the direct physical loss or damage occurred;

**(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

**(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

We will reduce the amount of your:

**(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**a.** We have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

**a.** The Net Income (Net Profit or Loss before income taxes), and

**b.** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

**Great Lakes 0589**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

Instead, we will determine the most we will pay using the following steps:

**Step (1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

**Step (2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1)**; and

**Step (3):** Multiply the total amount of loss by the figure determined in Step **(2)**.

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

    **(1)** Prepaid freight – outgoing;

    **(2)** Returns and allowances;

    **(3)** Discounts;

    **(4)** Bad debts;

    **(5)** Collection expenses;

    **(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

    **(7)** Cost of merchandise sold (including transportation charges);

    **(8)** Cost of other supplies consumed (including transportation charges);

    **(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

    **(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

    **(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

    **(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $400,000 |
|---|---|---|
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $150,000 |
| | The amount of loss is: | $ 80,000 |

**Step (1):** $400,000 \times 50\% = \$200,000$

(the minimum amount of insurance to meet your Coinsurance requirements)

**Step (2):** $\$150,000 \div \$200,000 = .75$

**Step (3):** $\$80,000 \times .75 = \$60,000$

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $400,000 |
|---|---|---|
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $200,000 |
| | The amount of loss is: | $ 80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

    **1. Maximum Period Of Indemnity**

        **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

Great Lakes 0590
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

  **(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

  **(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

  **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

  **b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

    **(1)** The Limit of Insurance, multiplied by

    **(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | The Limit of Insurance is: | $ 120,000 |
|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |

($120,000 x 1/4 = $30,000)

If, in this example, the actual amount of loss is:

| Days 1–30: | $ 40,000 |
|---|---|
| Days 31–60: | $ 20,000 |
| Days 61–90: | $ 30,000 |
| | $ 90,000 |

We will pay:

| Days 1–30: | $ 30,000 |
|---|---|
| Days 31–60: | $ 20,000 |
| Days 61–90: | $ 30,000 |
| | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

  **a.** To activate this Optional Coverage:

    **(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

      **(a)** During the 12 months prior to the date of the Work Sheet; and

      **(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

    **(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

      **(a)** The Coinsurance percentage shown in the Declarations; multiplied by

      **(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

  **b.** The Additional Condition, Coinsurance, is suspended until:

    **(1)** 12 months after the effective date of this Optional Coverage; or

    **(2)** The expiration date of this policy;

  whichever occurs first.

  **c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

    **(1)** Within 12 months of the effective date of this Optional Coverage; or

    **(2)** When you request a change in your Business Income Limit of Insurance.

  **d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

    **(1)** The Business Income Limit of Insurance; divided by

    **(2)** The Agreed Value.

**Example**

| When: | The Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1):** $100,000 ÷ $200,000 = .50

Step **(2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

© Insurance Services Office, Inc., 2011

**Great Lakes 0591**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**F. Definitions**

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

   (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

Great Lakes 0592
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

2. The coverage territory is:

   a. The United States of America (including its territories and possessions);

   b. Puerto Rico; and

   c. Canada.

---

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987   ☐

Great Lakes 0593
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    **a.** Someone insured by this insurance;

    **b.** A business firm:

        **(1)** Owned or controlled by you; or

        **(2)** That owns or controls you; or

    **c.** Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987  **CP 00 90 07 88**  ☐

**Great Lakes 0594**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

COMMERCIAL PROPERTY
CP 01 25 02 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

**C.** The following is added:

If windstorm is a Covered Cause of Loss and loss or damage to Covered Property is caused by or results from windstorm, the following exclusion applies in:

**1.** Broward County;

**2.** Dade County;

**3.** Martin County;

**4.** Monroe County;

**5.** Palm Beach County; and

**6.** All the areas east of the west bank of the Intracoastal Waterway in the counties of:

**a.** Indian River; and

**b.** St. Lucie.

**Windstorm Exterior Paint And Waterproofing Exclusion**

We will not pay for loss or damage caused by windstorm to:

**1.** Paint; or

**2.** Waterproofing material;

applied to the exterior of buildings unless the building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

**a.** The amount of the Windstorm or Hail Deductible; or

**b.** The value of Covered Property when applying the Coinsurance Condition.

**D.** The **Loss Payment** Condition dealing with the number of days within which we must pay for covered loss or damage is replaced by the following:

Provided you have complied with all the terms of this Coverage Part, we will pay for covered loss or damage within the earliest of the following:

**(1)** Within 20 days after we receive the sworn proof of loss and reach written agreement with you;

**(2)** Within 30 days after we receive the sworn proof of loss and:

**(a)** There is an entry of a final judgment; or

**(b)** There is a filing of an appraisal award with us; or

**(3)** Within 90 days of receiving notice of an initial, reopened or supplemental claim, unless we deny the claim during that time or factors beyond our control reasonably prevent such payment. If a portion of the claim is denied, then the 90-day time period for payment of claim relates to the portion of the claim that is not denied.

Paragraph **(3)** applies only to the following:

**(a)** A claim under a policy covering residential property;

**(b)** A claim for building or contents coverage if the insured structure is 10,000 square feet or less and the policy covers only locations in Florida; or

© Insurance Services Office, Inc., 2011

Great Lakes 0595
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

(c) A claim for contents coverage under a tenant's policy if the rented premises are 10,000 square feet or less and the policy covers only locations in Florida.

**E. Sinkhole Collapse Coverage Removed**

Sinkhole Collapse coverage is removed, as indicated in Paragraphs **E.1.** through **E.4.;** and coverage for Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **F.**

1. In the Causes Of Loss – Basic Form and in the Standard Property Policy, Sinkhole Collapse is deleted from the Covered Causes of Loss and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

2. In the Causes Of Loss – Broad Form, Sinkhole Collapse is deleted from the Covered Causes of Loss and from the Additional Coverage – Collapse; and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

3. In the Causes Of Loss – Special Form, Sinkhole Collapse is deleted from the "specified causes of loss" and is no longer an exception to the Earth Movement Exclusion.

4. In the Mortgageholders Errors And Omissions Coverage Form, Sinkhole Collapse is deleted from the Covered Causes of Loss under Coverage **B** and from the "specified causes of loss", and is no longer an exception to the Earth Movement Exclusion.

Further, this Coverage Part does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this policy.

**F.** The following is added to this Coverage Part as a Covered Cause of Loss. In the Causes Of Loss – Special Form and Mortgageholders Errors And Omissions Coverage Form, the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage – Collapse.

**Catastrophic Ground Cover Collapse**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

1. The abrupt collapse of the ground cover;

2. A depression in the ground cover clearly visible to the naked eye;

3. "Structural damage" to the building, including the foundation; and

4. The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Coverage Part), only one Limit of Insurance will apply to such loss or damage.

**G.** The following applies to the **Additional Coverage – Civil Authority** under the Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form and Extra Expense Coverage Form:

1. The Additional Coverage – Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply.

2. The Additional Coverage – Civil Authority is limited to a coverage period of up to four weeks. With respect to described premises located in Florida, such four-week period is replaced by a three-week period.

3. Civil Authority coverage is subject to all other provisions of that Additional Coverage.

© Insurance Services Office, Inc., 2011

CP 01 25 02 12

**Great Lakes 0596**

**J'Cam Invs. LLC v. Great Lakes Ins. SE**

**Case No. 2023-001067-CA-01**

**H.** The following provisions are added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

    **(1)** A claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm is barred unless notice of claim is given to us in accordance with the terms of this policy within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.)

    This provision concerning time for submission of claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this policy under the Legal Action Against Us Condition, including any amendment to that condition.

    **(2)** Any inspection or survey by us, or on our behalf, of property that is the subject of a claim, will be conducted with at least 48 hours' notice to you. The 48-hour notice may be waived by you.

**I.** The following definition of structural damage is added with respect to the coverage provided under this endorsement:

"Structural damage" means a covered building, regardless of the date of its construction, has experienced the following.

**1.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

**2.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

**3.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**4.** Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**5.** Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

Great Lakes 0597
J'Cam Invs. LLC v. Great Lakes Ins. SE
Case No. 2023-001067-CA-01

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

© ISO Properties, Inc., 2006

**Great Lakes 0598**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

IL 09 35 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

   **1.** The failure, malfunction or inadequacy of:

      **a.** Any of the following, whether belonging to any insured or to others:

         **(1)** Computer hardware, including micro-processors;

         **(2)** Computer application software;

         **(3)** Computer operating systems and re-lated software;

         **(4)** Computer networks;

         **(5)** Microprocessors (computer chips) not part of any computer system; or

         **(6)** Any other computerized or electronic equipment or components; or

      **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorse-ment;

      due to the inability to correctly recognize, proc-ess, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

   **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

   **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

   **2.** Under the Commercial Property Coverage Part:

      **a.** In a "Specified Cause of Loss", or in eleva-tor collision resulting from mechanical breakdown, under the Causes of Loss — Special Form; or

      **b.** In a Covered Cause of Loss under the Causes Of Loss — Basic Form or the Causes Of Loss — Broad Form;

   we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", eleva-tor collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modifi-cation of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficien-cies or change any features.

IL 09 35 07 02          © ISO Properties, Inc., 2001          **Page 1 of 1**   ☐

**Great Lakes 0599**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

COMMERCIAL GENERAL LIABILITY
CG 40 15 12 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANNABIS EXCLUSION WITH HEMP EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**a.** The design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of "cannabis"; or

**b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "cannabis"; or

**2.** "Property damage" to "cannabis".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.1.** or **A.2.** above.

However, Paragraph **A.1.b.** does not apply to "bodily injury" or "property damage" arising out of the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, or contact with, "cannabis" by:

**(1)** An insured; or

**(2)** Any other person for whom you are legally responsible

but only if the "bodily injury" or "property damage" does not arise out of your selling, serving or furnishing of "cannabis" to any person described above.

**B.** The exclusion in Paragraph **A.** does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of goods or products containing or derived from hemp, including, but not limited to:

**a.** Seeds;

**b.** Food;

**c.** Clothing;

**d.** Lotions, oils or extracts;

**e.** Building Materials; or

**f.** Paper.

**2.** "Property damage" to goods or products described in Paragraph **B.1.** above.

However, Paragraphs **B.1.** and **B.2.** above do not apply to the extent any such goods or products are prohibited under an applicable state or local statute, regulation or ordinance in the state wherein:

**(1)** The "bodily injury" or "property damage" occurs;

**(2)** The "occurrence" which caused the "bodily injury" or "property damage" takes place; or

**(3)** The offense which caused the "personal and advertising injury" was committed;

**3.** "Personal and advertising injury" arising out of the following offenses:

**a.** False arrest, detention or imprisonment; or

**b.** The wrongful eviction from, wrongful entry into, or invasion of the right or private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

**Great Lakes 0600**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

**C.** The following definition is added to the **Definitions** section:

"Cannabis":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

**2.** Paragraph **C.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

**a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

**b.** Any compound, byproduct, extract, derivative, mixture or combination, such as:

**(1)** Resin, oil or wax;

**(2)** Hash or hemp; or

**(3)** Infused liquid or edible cannabis;

whether or not derived from any plant or part of any plant set forth in Paragraph **C.2.a.**

**Great Lakes 0601**
**J'Cam Invs. LLC v. Great Lakes Ins. SE**
**Case No. 2023-001067-CA-01**

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2023-017794-CA-01

J'CAM INVESTMENTS LLC,

      Plaintiff,

v.

GREAT LAKES INSURANCE SE,

      Defendant.

_____/

## **SUMMONS**

STATE OF FLORIDA:

    YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint, Request for Production as to Claim 154317, Request for Production as to Claim 154316, First Set of Interrogatories, and Notice of Requesting Depositions in this action on the Defendant:

<div align="center">

GREAT LAKES INSURANCE SE
c/o Chief Financial Officer as RA
200 E. GAINES ST
TALLAHASSEE, FL 32399-0000

</div>

    The Defendant is hereby required to serve written defenses to the Complaint on Plaintiff's attorney, whose name and address are:  Quintana Law, PA, 237 S Dixie Highway, Floor 4, Suite 426, Coral Gables, Florida 33133 within twenty (20) days after service of this summons on the Defendant, exclusive of the day of service and to file the original of the defenses with the clerk of this court either before service on Plaintiff's attorney or immediately thereafter.  If the Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

    WITNESS my hand and the seal of said court on_____.

<div align="center">

As Clerk of the Court

</div>

               By:_____

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2023-017794-CA-01

J'CAM INVESTMENTS LLC,

      Plaintiff,

v.

GREAT LAKES INSURANCE SE,

      Defendant.

_____/

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

Plaintiff, J'CAM INVESTMENTS LLC ("Plaintiff"), pursuant to Rule 1.340 of the Florida Rules of Civil Procedure, hereby propound the following Interrogatories to Defendant, GREAT LAKES INSURANCE SE ("Defendant"), to be answered in writing, *under oath* within forty-five (45) days from the date of service.

**Dated:** June 29, 2023.

                **QUINTANA LAW, PA**
                *Attorneys for Plaintiff*
                237 S. Dixie Highway
                Floor 4, Suite #426
                Coral Gables, Florida 33133
                Tel. (305) 376-0821
                Primary Email: bquintana@quintanalawpa.com
                Secondary Email: paralegal@quintanalawpa.com

                By:    */s/ Brittany Quintana Marti*
                        Brittany Quintana Marti, Esq.
                        Fla. Bar No. 98746

## **INSTRUCTIONS**

The following instructions apply to these Interrogatories:

1.      Pursuant to Florida Rules of Civil Procedure, these interrogatories are continuing so as to require the filing of subsequent answers promptly in the event that defendant, by or through any of their agents, counsels or other representatives, learn additional facts relevant to any answers not set forth in their answers to these Interrogatories or discover that any information given in an answer or answers is erroneous.

2.      Each interrogatory is to be answered separately and as completely as possible. The fact that investigation is continuing or that discovery is not complete does not excuse failure to answer each interrogatory as fully as possible. The omission of any name, fact, or other item of information from an answer shall be deemed a representation that such name, fact, or other item is not known to defendant, his agents, counsel, or other representatives at the time the answers to these Interrogatories are served upon Plaintiff.

3.      For each and every answer to these Interrogatories:

   a.  Identify each and every person who participated in supplying information and/or drafting your response or any part thereof,

   b.  If the answer to any of these interrogatories was made by referring to or reviewing any documents, identify each and every document referred to or reviewed and the Interrogatory or Interrogatories in connection with which they were used.

4.      As used in these Interrogatories the singular shall be deemed to include the plural, the plural to include the singular, and words in the masculine, feminine, or neuter shall include each of the other genders as necessary to make the Interrogatory inclusive rather than exclusive.

5.      Where an Interrogatory contains a general question or questions, followed by a specific question or questions, the specific question or questions are to be read and interpreted as requesting additional information, not as limiting the general question or questions.

6.      With respect to each Interrogatory, identify each and every document prepared by, or in the possession, custody, or control of you or any of your officers, agents, or employees that relates to or refers to the subject matter of the Interrogatory in question.

7.     Whenever information is required in one of the following Interrogatories or subparts thereof that you previously furnished in answer to another Interrogatory herein, such information need not be restated. It will be sufficient for you to identify the previous answer containing the information requested.

8.     Whenever an Interrogatory calls for information that is not available to you in the form requested but which is available in another form or can be obtained at least in part from other data in your possession, so state and either (i) supply the information requested in the form in which it is available or (ii) supply the data from which the information requested can be obtained.

9.     If you claim a privilege with respect to information pertaining to any document that you are asked to identify or describe in these Interrogatories, furnish a list signed by counsel giving the following information with respect to each such document:

   a.   The title of the documents.
   b.   The nature of the documents, e.g. interoffice memorandum, correspondence, report etc.
   c.   The identity of the sender and the identity of the recipient(s) of the document,
   d.   A statement of the basis from which the privilege is claimed and a summary of the subject matter of the document in sufficient detail to permit the Court to rule on the propriety of the claim of privilege, and
   e.   The paragraph number of the Interrogatory to which the document is responsive or otherwise pertains;

10.     If you contend that it would be unreasonably burdensome to obtain and provide all of the information called for in response to any one of these interrogatories or any subpart thereof, then in response to the appropriate interrogatory or subpart:

   a.   Set forth all such  information that is available to you without undertaking what you contend to be an unreasonable burden;
   b.   State with particularity the grounds on which you contend that additional efforts to obtain such information would be unreasonable burdensome; and
   c.   Describe with particularity the efforts made by you to secure such information, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such information, including the duration of time spent and nature of work done by each person;

11.     Interrogatories calling for numerical or chronological information shall be deemed, to the extent that precise figures or dates are not known, to call for estimates. In each

instance that an estimate is given, identify it as such together with the source of information upon which you base the estimate.

12.     In answering these Interrogatories every source of information to which you have access should be consulted, regardless of whether the source is within your immediate possession or control. All documents or other information in the possession of experts or consultants should be consulted.

13.     You may, in lieu of identifying any Document or written documentation, attach a true correct copy of each Document as an exhibit to the answers to these interrogatories. On each occasion in which you choose to attach a Document as your answer to an interrogatory, identify the portion of the Document that answers the interrogatory.

14.     Identify each Document produced pursuant to an interrogatory by the paragraph number of the interrogatory in response to which it is produced and by the file from which the document was produced.

15.     If any of the information furnished in an answer to all or part of any interrogatory is not within your personal knowledge, identify each person who has personal knowledge of the information furnished in such answer and each person who communicated to you any part of the information furnished.

16.     If an answer to all or any part of the interrogatory is not presently known or available to you, include a statement to that effect, furnish the information now known or otherwise available to you, and respond to the entire interrogatory by supplemental answer, in writing, under oath, within ten days from the time the entire answer becomes known or available to you, but, in no event less than five days prior to trial.

## <u>DEFINITION OF TERMS</u>

A.     Reference in these Interrogatories to "You" and "your" is intended to include the Defendant, GREAT LAKES INSURANCE SE, all corporations, firms, and other entities owned or controlled by the defendant, together with its officers, directors, agents, employers and attorneys, and other representatives of such entities acting and purporting to act on its behalf now, or any time in the past.

B.     As used herein, "Complaint" shall mean: the Complaint filed by the Plaintiff(s)/Insured(s) in this action.

C.     As used herein, "Claim" shall mean: any statement, concept, assertion, idea, allegation, fact, law, rule, theory, observation, cause of action, or principle whatsoever, based

upon which Plaintiff demand that they have suffered damages, or have a right to payment, as the result of any act or omission of Defendant.

D.    As used herein, "person" or "persons" shall mean: any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, and group of natural persons or other entity, and includes any other person acting on behalf of a person.

E.    As used herein, "communications" shall mean: any information given, whether oral or written; any oral or written statement, conference, consultation, dialogue, colloquy, discussion, conversation, agreement, the sharing of knowledge by one with another, bargaining preparatory to making a contract or any expression of any kind.

F.    As used herein, "document" shall mean: any kind of written, typed, recorded or graphic matter, however produced of reproduced, of any kind or description, whether sent or received, and every record of every type, including originals, non-identical copies and drafts, and both sides of any documentation where information appears on both sides, and including but not limited to: letters, correspondence, memoranda, meeting transcripts or minutes, public filings or tax returns, papers, books, telegrams, bulletins, notices, announcements, instructions, charts, manuals, brochures, schedules, cables, telex messages, notes, notations, accountants' working papers, transcriptions, agendas, reports, recordings of telephone or other conversations, or interviews, of conferences or of meetings, telephone messages, diaries, indices, books, reports, ledgers, working papers, invoices, worksheets, receipts, computer printouts, financial statements, schedules affidavits, contracts, canceled checks, statements, transcripts, magazine or newspaper articles, periodicals, releases and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing, whether handwritten, printed or electronically prepared, filed or stored, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journals, statistical records, calendars, appointment books, diaries, lists, tabulations, sound recordings, computer print-outs, data processing input and output, microfilms, newspapers, magazines, books, periodicals or press releases, including information stored on any electromagnetic storage device, any written, printed, typed, recorded, or graphic matter, however produced or reproduced or stored to which you have or had access. "Document" shall also be deemed to include any summary of a document or documents called for hereafter.

G.    The term "all documents" shall mean: every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

H.    As used herein, the terms "and" as well as "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive. The

terms "all" shall mean "any and all." The term "each" shall mean "each and every" and the term "every" shall mean "each and every."

I.      As used herein, "refer" or "relating to" or "relevant to" shall mean: setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, concerning, involving, comprising, reflecting to, consisting of, or having logical or factual connection whatever with the subject matter in question.

J.      As used herein, "locate" or "location" shall mean: to state the present whereabouts of each Document and to identify the persons having possession, custody or control thereof.

K.      As used herein, "date" shall mean: the exact day, month, and year, if ascertainable, or if not, the best approximation (including relationship in time to other events).

L.      As used herein, "Identify", when used in reference to:

(1) An <u>individual</u>, shall mean to state his full name, present or last known address (designating which) and present or last known employment, position or business affiliation (designating which) including job title and employment address; or such other information sufficient to enable Plaintiff to identify the person;

(2) A firm<u>, corporation, pro-proprietorship, association, or other organization or entity</u>, shall mean to state its full name and present or last known address(designating which) the legal form of such entity or organization and the residence address, job title, and business address for the chief executive officer.

(3) A document shall mean to state the title (if any), date, author, sender, recipient, type of document (i.e. letter, memorandum, book, telegram, chart, etc.) or some other means of identifying it, a summary of its contents and its present location and custodian;

(4) An oral transaction or oral communication shall mean to state the date and place thereof, the author and the recipient of the communication, and a sufficient summary of the contents of the communication to indicate the nature and substance.

M.      "Identify," when used in any other context that is herein above set forth, shall mean to describe the act, word, situation, event, etc. (and/or conduct, course of action of nay nature whatsoever, including without limitation any failure to act, to engage in any conduct or to

6

pursue any course of action), to be identified as fully as possible and identify each document or communication or act in which such act, word, situation, event, conduct or course of action, etc., was recorded, refers or relates to each answer, forms all or part of the basis for an answer; and/or corroborates and answer.

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

1.      Identify each person who prepared answers, supplied and/or provided information used to prepare your answers to these Interrogatories, stating each person's current business address and telephone number.

2.      Identify all persons, including his/her current address and telephone number, with knowledge of any facts regarding the issues raised in the pleadings and regarding your determination of coverage and payment of Plaintiff(s) two subject Claims for benefits under the policy of insurance covering the insured property, describing the substance of each such persons' knowledge.

3.      Identify all communications you had with Plaintiff(s) or any agent(s) acting on Plaintiff(s) behalf regarding the two Claims at issue in the Complaint, describing in detail the substance of the communication, whether it was in writing (including via email) or oral, the date of the communication, the names of all persons present during the communication, and stating the current address and telephone number of all persons referenced in your response to this interrogatory.

4.      Identify all inspections, reviews and/or investigations that you conducted of the insured property for the past five years through the date of Defendant's Answers to Interrogatories, and for each and every such inspection, review and/or investigation, describe the date, the reason for the inspection, review/investigation, the name of the person(s) present on your behalf and on behalf of the Plaintiff(s), whether a report or other document was generated as a result, whether photographs or video were taken at the inspection/review/investigation or obtained, and stating the current location of each and every document, photograph or other material that is responsive to this interrogatory request.

5.      Please state the date that the coverage decision was made in connection with each of the two Claims that are the subject of this lawsuit and well as the names, addresses and telephone numbers of all individuals who participated in making an/or conveying the coverage determination(s) to the Plaintiff(s) and/or Plaintiff(s) agent(s).

6.      Identify all persons who are or have been responsible for determining and/or analyzing on your behalf how the policy of insurance that you issued for the insured property applies to the two Claims for coverage at issue in this lawsuit.

7.      Identify any and all estimates for damages for the insured property that you prepared or that was prepared on your behalf from September 1, 2021 through the present date, specifying the name of all persons who prepared the estimate(s), the date it/they was/were prepared, the year of pricing used and the source of pricing, the reason that the estimate(s) wereprepared, whether any monies were paid by you pursuant to any such estimate, and the names of all persons with knowledge of any such estimate.

8.      Identify each written estimate for repair or replacement, including the amount set forth in each estimate and the names and addresses of the persons or entities who prepared each estimate, relied upon by the Defendant in support of the coverage determination made by the Defendant for each of the two Claims set forth in Plaintiff's Complaint.

9.      Describe each and every investigative/evaluation step conducted by you or any of your representative with respect to the facts surrounding the circumstances of the subject loss, and list the names of the individuals performing those steps, the dates of the investigative/evaluation actions, and the results of the same.

10.     Please list all documents or tangible items that support each of Defendant's Defenses and/or Affirmative Defenses.

11.     For any and all policy defenses which  you believe are applicable to each of the Claims set forth in the Complaint, please describe in detail the factual and legal basis for any such defenses and give complete names, residence addresses, business addresses, and telephone numbers of each person believed or known by you, your agents or attorneys, to have knowledge of the facts which would provide the basis for any such defense.

12.     Identify each item of expense or damage presented to Defendant in connection with the subject lawsuit that you assert should not be included in the payable damages, explaining in detail and with specificity for each and every item, why such damage or expense should not be included in payable damages.

13.     Identify all insurance claims made to Defendant by the Plaintiff(s) in connection with the subject Property identified in the Complaint for the past six (6) years through the date of your Answer to these Interrogatories.

14.     Identify all statements (oral, written and/or recorded) taken by or on behalf of the Defendant in connection with the Claim described in Plaintiff(s) Complaint, including the date of the statement, the name of the individual who gave the recorded statement, the name, address and telephone number of the individual who took the recorded statement, and the current location of the recorded statement.

Dated: _____.

By: _____
                 GREAT LAKES INSURANCE SE

Print Name: _____

Title or Rank: _____

STATE OF _____            )
                                         ) ss:
COUNTY OF_____ _____         )

      Before me the undersigned personally appeared _____ who, being first fully sworn, and who is personally known to me or produced _____ as identification, who did/did not take an oath, deposes and says that the foregoing statements contained herein are true to the best of his knowledge and belief.

Dated: _____.

_____
NOTARY PUBLIC

_____
PRINT NAME

_____
My commission expires:

**QUINTANA LAW, PA**

Case 1:23-cv-22630-RAR    Document 1-2    Entered on FLSD Docket 07/14/2023    Page 145 of 174

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2023-001067-CA-01

J'CAM INVESTMENTS LLC,

   Plaintiff,

v.

GREAT LAKES INSURANCE SE,

   Defendant.

_____/

## **PLAINTIFF'S NOTICE OF REQUESTING DEPOSITIONS**

Plaintiff, J'CAM INVESTMENTS LLC ("Plaintiff"), by and through undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.310, hereby gives notice in writing of requesting Defendant, GREAT LAKES INSURANCE SE ("Defendant"), to make available and provide dates, and all names, so that Plaintiff may take the testimony by deposition upon oral examination of the following (additional witnesses and/or areas of inquiry may be noticed and disclosed as discovery progresses in this matter):

1.   Defendant's Fla. R. Civ. P. 1.310(b)(6) witness(es), including Defendant's corporate representative. *See Addendum "A" attached.*

2.   Field Adjuster(s), or independent adjuster(s) who inspected the insured property at issue in this case and/or generated an estimate in connection with the Plaintiff(s) damages related to claims number 154316 and 154317.

3.   Any Expert assigned to investigate Claims number 154316 and 154317 on behalf of Defendant.

4.      Any desk adjuster or claim representative who made coverage decisions and/or who corresponded with Plaintiff or Plaintiffs' representatives regarding the claims number 154316 and 154317, including but not limited to Patrick Stein.

5.      Any claim manager assigned to the underlying insurance claim.

Plaintiff(s) seeks to take the depositions of the above individuals. The attendance of any and all witnesses requested herein may be compelled by subpoena as provided in Fla. R. Civ. P. 1.410.

Pursuant to Florida Rule of Civil Procedure 1.310(b)(6), Defendant has a duty to educate and prepare its corporate representative to testify as to all information that is "known or reasonably available" to Defendant regarding or related to the areas of inquiry listed in the attached "Addendum A."

**[Addendum " A " on Next Page]**

**QUINTANA LAW, PA**

**ADDENDUM · A·**
**MATTERS UPON WHICH EXAMINATION WILL BE CONDUCTED**

1.      All communications, in any form, by and between Plaintiff(s) and Defendant, including its respective employees, agents, and representatives. This request includes correspondence, e- mails, letters, memoranda, notes, telephone messages, recorded conversations, statements, and any other documents or materials that are, or reflect, communications by and between Plaintiff(s) and Defendant regarding the Claims set forth in the Complaint.

2.      All communications, in any form, by and between any third parties and Defendant, including its respective employees, agents, and representatives, related in any way to the Claims set forth in the Complaint. This request includes correspondence, e-mails, letters, memoranda, notes, telephone messages, recorded conversations, statements, and any other documents or materials that are, or reflect, communications by and between Defendant and any third parties.

3.      All actions taken by Defendant, including its respective employees, agents, and representatives, to investigate or otherwise handle the subject losses, emergency services and/or repairs to the subject properties that are the subject matter of the Complaint.

4.      All inspections or examinations of the subject property conducted by Defendant, including its respective employees, agents, independent contractors, and representatives, with regard to the two Claims set forth in the Complaint.

5.      All reports generated by Defendant or its agents and/or experts relating to the two Claims set forth in the Complaint.

6.      All payments, formal or informal, that Defendant, including its respective employees, agents, and representatives, has made or offered to Plaintiff(s) or any third party with regard to the two Claims set forth in the Complaint.

3
**QUINTANA LAW, PA**

7.    All actions taken by Defendant, including its respective employees, agents, and representatives, to determine the cause of loss at the Property described in the Complaint for each of the two Claims set forth in the Complaint, to determine coverage under the insurance policy at issue in this action, and to determine the amount of damages caused by the losses described in the Complaint.

8.    Defendant's Affirmative Defenses and applicable policy language supporting Defendant's underpayment, refusal to pay, and/for denial of Plaintiff's two Claims set forth in the Complaint.

**Dated:**  June 29, 2023.                    **QUINTANA LAW, PA**
                                              *Attorneys for Plaintiff*
                                              237 S. Dixie Highway
                                              Floor 4, Suite #426
                                              Coral Gables, Florida 33133
                                              Tel. (305) 376-0821
                                              Primary Email: bquintana@quintanalawpa.com
                                              Secondary Email: paralegal@quintanalawpa.com


                                    By:    */s/ Brittany Quintana Marti*
                                              Brittany Quintana Marti, Esq.
                                              Fla. Bar No. 98746

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2023-017794-CA-01

J'CAM INVESTMENTS LLC,

      Plaintiff,

v.

GREAT LAKES INSURANCE SE,

      Defendant.

_____/

## **PLAINTIFF′S FIRST REQUEST FOR PRODUCTION TO DEFENDANT AS TO CLAIM NUMBER 154317**

Plaintiff, J'CAM INVESTMENTS LLC ("Plaintiff"), pursuant to Rule 1.350 of the Florida Rules of Civil Procedure, request that Defendant GREAT LAKES INSURANCE SE ("Defendant"), produce for inspection and/or copying within 45 days the items set forth herein, at the offices of Quintana Law, PA, 237 S. Dixie Highway, Floor 4, Suite #426, Coral Gables, Florida 33133.

*In addition to the definition of "documents" that is attached hereto, Defendant is requested to produce all files in the condition in which they are regularly maintained. If the files and their contents are reproduced, defendant is requested to provide a reproduction in the same format as that in which the files are actually maintained, including file jackets, labels, dividers, and all other properties necessary to simulate the actual file.*

## DEFINITIONS

A. Plaintiff(s)" or "Insureds(s)" means J'CAM INVESTMENTS LLC individually and any agent(s), employee(s), representative(s), attorneys and/or anyone else acting on behalf of J'CAM INVESTMENTS LLC.

B. "Defendant" and/or "you" and "your" means GREAT LAKES INSURANCE SE individually or any representatives, employees, officers, directors, agents or attorneys or other persons acting or purporting to act on behalf of GREAT LAKES INSURANCE SE.

C. The "Complaint" means the Complaint filed by the Insured(s) in this action.

D. The term "representative" as used herein with regard to a person or entity means and includes any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, each and every present and former director, officer, partner, employee, agent, independent consultant or expert or other person (including attorneys), such as friends, relatives and spouse, acting or purporting to act on behalf of the person or entity.

E. "Person" and "persons" shall refer to a natural person, an individual, firm, association, partnership, joint venture, corporation, trust and estate, or other form of legal or business entity, public or private.

F. "Document" and "documents" shall refer to and all written, recorded, or graphic matter, however produced or reproduced, of every kind and description, whether produced internally or received from outside sources, including, without limiting the generality of the foregoing, and all originals, copies, and drafts, of all papers, books, letters, correspondence, memoranda, catalogs, warranties, minutes of meetings, facsimiles transfer lists, shareholder lists, opinion letters, letters of understanding, letters of intent, private placement memoranda, SEC Form 504 Offer Statements, offering statements or circulars, memoranda of telephone conversations, telegrams, photographs, prospectus, drawings, sketches, feasibility studies, interoffice communications, patents, licenses, testing reports, laboratory reports, agreements, ledgers, books of account, summaries, computer print-outs, proposals, suggestions, legal pleadings, bills of sale, indemnity agreements, security agreements, account records, vouchers, checks, invoices, drafts, receipts, bills, statistical records, notebooks, calendars, appointment books, diaries, agendas, time sheets, logs, transaction files, credit reports, notations, notes, minutes of meetings, sound records, photo records or tape recordings or other data compilations from which information can be obtained, any transcriptions thereof, bulletins, circulars, press releases, notices, instructions, advertisements, work assignments, film, videotapes,

film negatives, research, articles, treatises, and including all attachments and enclosures thereto.

G.    Documents shall also include matters stored in an electronic medium, such matters being, among others, voice mail messages and files; backup voice mail files; e-mail messages and files; word processing documents; spreadsheets; presentation documents; graphics; animations; images; instant messages and/or instant message logs; backup e-mail files; deleted e-mail data files; program files; backup and archived tapes; temporary files; system history files; website log files; cache files; cookies and other electronically recorded information.

H.    Electronic documents shall also include matters described as accurate data; deleted data; backup data; metadata; migrated data; replicate data; residual data; and legacy data.

I.    Locations on which electronic data may be found include, but are not limited to:
a)     Individual computers;
b)     Laptops;
c)     Data bases;
d)     E-mails;
e)     Servers;
f)     Home computers;
g)     Archives;
h)     Networks;
i)     Computer systems, including legacy systems;
j)     Backup tapes; and
k)     Internet data.

J.    "Documents," "All documents" and "each and every document," as used in herein means all documents of the class requested and includes all documents in the immediate possession and control of the deponent and or all documents that can be obtained from other persons subject to the direction and control of the deponent, including, but not limited to, agents, employees, officers, directors, attorney, accountants, subcontractors and consultants.

K.    The term "concerning" means relating to, referring to, describing, evidencing and/or constituting.

L.    The conjunction "and" as well as the conjunction "or" shall each be interpreted in every instance as meaning "and/or" and shall not be interpreted so as to exclude any information otherwise within the scope of any discovery request.

M    The term "referring (to)" or "relating (to)" shall mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting, showing, disclosing, averring to, comprising, evidencing, or otherwise concerning.

N.    As used herein the singular shall include, the plural, the plural shall include the singular, the masculine, feminine and neuter shall include each of the other genders.

O.    "Any" shall include the word "all" and the word "all" shall include the word "any."

P.    The "Insured Property" shall refer to the properties located at 2010 SW 6th Street, Unit 1, Miami, Florida 33135 and the "Claim" refers to Claim No. 154317.

Q.    The term "communication" shall refer to any transmission of information by any means, including without limitation, by spoken language, electronic transmission of data or any other means.  The term "communications" shall include, without limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

R.    All other words have their plain and ordinary meaning.

## **<u>INSTRUCTIONS</u>**

1.    The party serving this request will require the production of original documents as stored in the ordinary course of business, or as segregated by category of response to which the documents are responsive.  All documents produced in response to this notice shall be presumed to be authentic for all purposes, including, but not limited to, for use at trial and at any other proceedings in this matter.  In either case, the party serving this request hereby demands an opportunity to inspect the file or container in which all documents responsive to this discovery request are stored.

2.    This Request shall be deemed continuing so as to require further and supplemental production in the event that the party requested to produce, or any of its attorneys, agents or representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial.

3.    If any documents are withheld on a claim of privilege, provide a written response setting forth the following information:

   (a)  identify the privilege claimed;
   (b)  state the date the document was prepared;
   (c)  state the author and recipient(s) of the document; and
   (d)  state the general subject matter of the document.

4.     If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

5.     All Objections to any category of documents to be produced pursuant to this Request or to any definition or instruction it contains shall be in writing and delivered to Plaintiff's counsel within the time provided in the applicable Florida Rules of Civil Procedure, or at such other time as is agreed upon by the parties or ordered by this Court.

6.     You are hereby put on notice not to destroy, conceal or alter any paper or electronic files, other data generated by and/or stored on computer systems and storage media (e.g., hard disks, floppy disks, backup tapes), or any other electronic data, such as voicemail. This includes, but is not limited to: email and other electronic communications; word processing documents; spreadsheets; databases; calendars; telephone logs; contact manager information; Internet usage files; offline storage or information stored on removable media; information contained on laptops or other portable devices; and network access information. The laws and rules prohibiting destruction of evidence apply to electronically-stored information in the same manner that they apply to other evidence. Due to its format, electronic information is easily deleted, modified or corrupted. Accordingly, you must take every reasonable step to preserve this information until the final resolution of this matter, including the preservation of such information from hard drives if computers are sold during the course of the litigation. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

7.     In the event that any document called for this Request has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author, recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

8.     Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

9.     Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to defendant, if any.

10.     If you contend that it would be unreasonable burdensome to obtain and provide all of the documents called for in response to any one of these requests, then in response to the appropriate request:

> (a) Furnish each such document that is available to you without undertaking what you contend to be an unreasonable burden;
> (b) State with particularity the grounds on which you contend that additional efforts to obtain such documents would be unreasonably burdensome; and
> (c) Describe with particularity the efforts made by you to secure such documents, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such documents, including the duration of time spent and nature of work done by each person.

11.     Unless otherwise indicated, all requests include the time period from the date of the Loss to the date you received this request.

12.     When producing the required documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

13.     When producing the required documents, please produce all other documents that are clipped, stapled or otherwise attached to any requested document.

14.     In the event such file(s) or document(s) has (have) been removed, either for the purpose of this action or form some other purpose, please state the name and address of the person who removed the file, the title of the file and each sub-file, if any, maintained within the file, and the present location of the file.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AS TO CLAIM NUMBER 154317

1.      A true and correct copy of all the applicable insurance policy issued to the Plaintiff(s), by Defendant, including any and all endorsements in effect on the date of the loss.

2.      All documents regarding the first notice of loss report, report from agent of the loss, or correspondence from Plaintiff(s), named insured(s) or attorneys.

3.      All telephone messages to or from you, or any of your agents on your behalf regarding receipt of notice of claims.

4.      All interoffice memoranda and claim notes regarding receipt of notice of the Claim and telephone conversations with anyone about the receipt of notice of the Claim.

5.      All correspondence to or from anyone, including any insurance agencies, any employers, any agencies hired as adjusters to investigate the claims herein.

6.      Any and all claim forms, including proof of loss forms, notice of loss reports, authorization forms and any other claim forms contained in said file in connection with the subject Property.

7.      Any and all documents containing any information on what was said by the plaintiff(s), or plaintiff(s)' agent(s) at any time during the handling and processing of the subject claim including adjuster notes, claim reports, interoffice memorandum, tape recordings of any statements made by plaintiff(s), or plaintiff(s)' agent(s), Examination Under Oath transcripts, and any transcripts or written statements from the plaintiff(s), or plaintiff(s)' agent(s).

8.      Each and every timesheet, log and all other documents reflecting time spent by defendant, at the Plaintiff(s) property.

9.      Each and every document, evidencing the name, address, and the position/relationship with defendant, of every individual who has visited or plans to visit the Plaintiff(s) property on behalf of defendant.

10.     Copies of any photographs and inspection reports of the insured property before the date of loss for the subject Claim.

11.     Copies of any photographs and inspection reports of the insured property after the date of loss for the subject Claim..

12. Any and all photographs and inspection reports, appraisal reports, roof and plumbing reports of the insured property received by the insurance carrier before and after the date of loss for the subject Claim..

13. Any and all invoices and bills reflecting payments made by the Plaintiff(s) with regard to premiums paid under the subject policy of insurance herein.

14. Any and all correspondence or written communications from the defendant to the Plaintiff(s) which in any manner pertains to the Plaintiff(s) loss as described in the Complaint for the subject Claim.

15. Any and all correspondence or written communications from the Plaintiff(s) to the defendant, which in any manner pertains to the plaintiff(s) loss as described in the Complaint for the subject Claim.

16. All communications between plaintiff(s) and Defendant regarding any and all matters, including without limitation, any claims made by Plaintiff(s) to Defendant under any policies of insurance issued for the insured property for the subject Claim.

17. Any and all documents of whatever nature and kind submitted by the Plaintiff and/or Plaintiff(s) agent(s), employee(s), attorneys, etc., to the Defendant, its agents, and/or employees in regard to the subject loss for the subject Claim.

18. Any and all written communication between Defendant and any third party concerning the processing, acceptance, or denial of any portion of the subject Claim.

19. All correspondence, forms, notations, memoranda or other information wherein you transmitted any information about Plaintiff(s) to any third party not an employee of defendant.

20.     Any and all materials, papers, documents, photographs or tangible things of any type relied upon by Defendant, other than the insurance policy, as a basis for exclusion of any portions of Plaintiff(s) claims for damages for the loss described in the Complaint in connection with the subject Claim.

21.     All inspection reports or other documents that evidence the cause of the damages at issue in the subject Claim as determined by you or your representative(s).

22.     All photographs or videos taken by you or your representative(s) in connection with the initial issuance or renewal of the subject Policy.

23.     All correspondence to and from any adjusters, public adjusters, contractor or appraiser that reviewed any damage which is the subject of the action herein including any printouts or explanations or supporting documentation for any reductions suggested by the adjuster, public adjuster, contractor or appraiser.

24.     Any and all photographs and/or video tapes within the possession, custody and control of the defendant, their agents or employees, concerning the subject matter of this litigation. As grounds for this paragraph, the Plaintiff(s) would state that they cannot without undue hardship, obtain a substantial equivalent of these photographs.

25.     The application for insurance and all documents submitted to your company by the insured(s) or their agent prior to issuance of the insurance contract.

26.     A complete copy of the underwriting file, cover to cover, including jackets, electronic notes/memoranda, and diaries, regarding the issuance of insurance to Plaintiff(s) property.

27.     Any and all estimates of damages to real property, personal property, expenses for removal for any coverage available for Plaintiff(s) loss subject matter of this litigation.

28.     Any and all estimates of damages to real property, personal property, or expenses generated by or on behalf of the Defendant in connection with the claim described in the Complaint.

29.     Any material or property that you or your representatives removed from the insured residence or business.

30.     Copies of any and all documents that show payments made to Plaintiff(s), if any, on this claim, including but not limited to a copy of each check issued to Plaintiff for payment of any portion of the subject C im.

31.     All appraisals of loss or value of loss prepared by, for, or on behalf of Defendant regarding the subject Claim by Plaintiff(s).

32.     Copies of any diagrams, models, drawings, sketches, blueprints or any other reproduction of the subject Property made before or after the subject loss as it relates to the Subject Claim.

33.     Copies of any and all Proof of Loss forms submitted by Plaintiff(s), their agent(s) to defendant, with copies of all supporting documentation.

34.     A copy of Defendant's file regarding the insured property in connection with the subject Claim.

35.     All investigative reports concerning the subject Claim, which is subject of this litigation, and all written communications between defendant and any third party concerning said report(s).

36.     Any document showing or explaining what items defendant made payment upon, the amount of damage, and how the amount was determined for the subject Claim.

37.     Any and all writings, memorandums, notes or other material reflecting examination by the defendant of any of the damage to the insured premises not covered above.

38.     Any and all statements, whether written, oral or recorded, in whatever fashion, taken of the Plaintiff(s) and/or their agents, servants, employees, etc., in regard to the subject Claim.

39.     Any and all statements, whether written, oral or recorded in whatever fashion, taken of all independent witnesses or other persons by the defendant with regard to the subject Claim.

40.     A list and/or documents showing the names, addresses and telephone numbers of any and all witnesses whose statements have been taken, indicating their full legal name, addresses and telephone number in regard to the subject Claim.

41.     All report(s), including adjuster(s) report(s), examiner(s) report (s) and expert report(s), including without limitation, diagrams, photographs, notes, memoranda, field notes, samples, contracts, video tapes, correspondence, calculations, rough drafts, partial drafts, and laboratory reports related in any way to the facts of the claims in the Complaint or to the litigation.

42.     Any and all documentation or other tangible evidence which you contend supports your claim that all conditions precedent to bringing this action have not been met.

43.     All correspondence to the insured or their representative informing them of the right to participate in mediation pursuant to Section 627.7015 Fla Stat., and all documents explaining mediation to insured.

44.     All documents, including photographs, that Defendant reviewed, relied on, identified or referred to in answering Plaintiff(s) First Set of Interrogatories.

45.     All documents, including photographs, that defendant relied upon as basis for payment of the subject Claim.

46.     All written or computerized records of any investigation or adjustment activities from the date of the loss, through the date of this lawsuit or the date litigation was first reasonably anticipated or conducted in connection with the subject Claim.

47.     All written or computerized communications and written or computerized records of oral communications, whether in person or by phone, to or from any employee or agent of defendant that concern, refer or relate in any way to the decision to pay and the amount paid in connection with the subject Claim.

48.     Any and all documents, notes, records, test results and related materials relied upon by you in reaching your conclusion to withhold payment on the subject Claim.

49.     All documents which indicate or support the date when Defendant contends it first reasonably anticipated litigation with Plaintiff(s) and all reasons it reasonably anticipated litigation at that time.

50.     For each and every affirmative defense, all documents, communications, which you relied on in each and every affirmative defense and/or any and every document, electronic documents, photographs, and/or communications which support each of Defendant's affirmative defenses.

51.     All communications, correspondence and/or documents produced to or by any other insurance company to Defendant regarding the subject Claim.

52.     Defendant's privilege log, pursuant to Florida Rule of Civil Procedure 1.280(b)(5), which identifies with particularity any and all documents withheld in response to the

preceding paragraphs and in response to Plaintiff(s) First Set of Interrogatories as privileged, confidential or otherwise protected from discovery.

**Dated:** June 29, 2023.             **QUINTANA LAW, PA**
                                      *Attorneys for Plaintiff*
                                      237 S. Dixie Highway
                                      Floor 4, Suite #426
                                      Coral Gables, Florida 33133
                                      Tel. (305) 376-0821
                                      Primary Email: bquintana@quintanalawpa.com
                                      Secondary Email: paralegal@quintanalawpa.com


                                      By:    */s/ Brittany Quintana Marti*
                                             Brittany Quintana Marti, Esq.
                                             Fla. Bar No. 98746

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2023-017794-CA-01

J'CAM INVESTMENTS LLC,

      Plaintiff,

v.

GREAT LAKES INSURANCE SE,

      Defendant.

_____/

## **PLAINTIFF′S FIRST REQUEST FOR PRODUCTION TO DEFENDANT AS TO CLAIM NUMBER 154316**

Plaintiff, J'CAM INVESTMENTS LLC ("Plaintiff"), pursuant to Rule 1.350 of the Florida Rules of Civil Procedure, request that Defendant GREAT LAKES INSURANCE SE ("Defendant"), produce for inspection and/or copying within 45 days the items set forth herein, at the offices of Quintana Law, PA, 237 S. Dixie Highway, Floor 4, Suite #426, Coral Gables, Florida 33133.

*In addition to the definition of "documents" that is attached hereto, Defendant is requested to produce all files in the condition in which they are regularly maintained.  If the files and their contents are reproduced, defendant is requested to provide a reproduction in the same format as that in which the files are actually maintained, including file jackets, labels, dividers, and all other properties necessary to simulate the actual file.*

1
**QUINTANA LAW, PA**

## **DEFINITIONS**

A.  Plaintiff(s)" or "Insureds(s)" means J'CAM INVESTMENTS LLC individually and any agent(s), employee(s), representative(s), attorneys and/or anyone else acting on behalf of J'CAM INVESTMENTS LLC.

B.  "Defendant" and/or "you" and "your" means GREAT LAKES INSURANCE SE individually or any representatives, employees, officers, directors, agents or attorneys or other persons acting or purporting to act on behalf of GREAT LAKES INSURANCE SE.

C.  The "Complaint" means the Complaint filed by the Insured(s) in this action.

D.  The term "representative" as used herein with regard to a person or entity means and includes any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, each and every present and former director, officer, partner, employee, agent, independent consultant or expert or other person (including attorneys), such as friends, relatives and spouse, acting or purporting to act on behalf of the person or entity.

E.  "Person" and "persons" shall refer to a natural person, an individual, firm, association, partnership, joint venture, corporation, trust and estate, or other form of legal or business entity, public or private.

F.  "Document" and "documents" shall refer to and all written, recorded, or graphic matter, however produced or reproduced, of every kind and description, whether produced internally or received from outside sources, including, without limiting the generality of the foregoing, and all originals, copies, and drafts, of all papers, books, letters, correspondence, memoranda, catalogs, warranties, minutes of meetings, facsimiles transfer lists, shareholder lists, opinion letters, letters of understanding, letters of intent, private placement memoranda, SEC Form 504 Offer Statements, offering statements or circulars, memoranda of telephone conversations, telegrams, photographs, prospectus, drawings, sketches, feasibility studies, interoffice communications, patents, licenses, testing reports, laboratory reports, agreements, ledgers, books of account, summaries, computer print-outs, proposals, suggestions, legal pleadings, bills of sale, indemnity agreements, security agreements, account records, vouchers, checks, invoices, drafts, receipts, bills, statistical records, notebooks, calendars, appointment books, diaries, agendas, time sheets, logs, transaction files, credit reports, notations, notes, minutes of meetings, sound records, photo records or tape recordings or other data compilations from which information can be obtained, any transcriptions thereof, bulletins, circulars, press releases, notices, instructions, advertisements, work assignments, film, videotapes,

film negatives, research, articles, treatises, and including all attachments and enclosures thereto.

G. Documents shall also include matters stored in an electronic medium, such matters being, among others, voice mail messages and files; backup voice mail files; e-mail messages and files; word processing documents; spreadsheets; presentation documents; graphics; animations; images; instant messages and/or instant message logs; backup e-mail files; deleted e-mail data files; program files; backup and archived tapes; temporary files; system history files; website log files; cache files; cookies and other electronically recorded information.

H. Electronic documents shall also include matters described as accurate data; deleted data; backup data; metadata; migrated data; replicate data; residual data; and legacy data.

I. Locations on which electronic data may be found include, but are not limited to:
   a) Individual computers;
   b) Laptops;
   c) Data bases;
   d) E-mails;
   e) Servers;
   f) Home computers;
   g) Archives;
   h) Networks;
   i) Computer systems, including legacy systems;
   j) Backup tapes; and
   k) Internet data.

J. "Documents," "All documents" and "each and every document," as used in herein means all documents of the class requested and includes all documents in the immediate possession and control of the deponent and or all documents that can be obtained from other persons subject to the direction and control of the deponent, including, but not limited to, agents, employees, officers, directors, attorney, accountants, subcontractors and consultants.

K. The term "concerning" means relating to, referring to, describing, evidencing and/or constituting.

L. The conjunction "and" as well as the conjunction "or" shall each be interpreted in every instance as meaning "and/or" and shall not be interpreted so as to exclude any information otherwise within the scope of any discovery request.

M       The term "referring (to)" or "relating (to)" shall mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting, showing, disclosing, averring to, comprising, evidencing, or otherwise concerning.

N.      As used herein the singular shall include, the plural, the plural shall include the singular, the masculine, feminine and neuter shall include each of the other genders.

O.      "Any" shall include the word "all" and the word "all" shall include the word "any."

P.      The "Insured Property" shall refer to the properties located at 2010 SW 6th Street, Unit 3, Miami, Florida 33135, and the subject "Claim" refers to Claim Number 154316 and/or the loss that occurred at the subject Property.

Q.      The term "communication" shall refer to any transmission of information by any means, including without limitation, by spoken language, electronic transmission of data or any other means.  The term "communications" shall include, without limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

R.      All other words have their plain and ordinary meaning.

## **INSTRUCTIONS**

1.      The party serving this request will require the production of original documents as stored in the ordinary course of business, or as segregated by category of response to which the documents are responsive.  All documents produced in response to this notice shall be presumed to be authentic for all purposes, including, but not limited to, for use at trial and at any other proceedings in this matter.  In either case, the party serving this request hereby demands an opportunity to inspect the file or container in which all documents responsive to this discovery request are stored.

2.      This Request shall be deemed continuing so as to require further and supplemental production in the event that the party requested to produce, or any of its attorneys, agents or representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial.

3.      If any documents are withheld on a claim of privilege, provide a written response setting forth the following information:

        (a)  identify the privilege claimed;
        (b)  state the date the document was prepared;
        (c)  state the author and recipient(s) of the document; and
        (d)  state the general subject matter of the document.

4.      If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

5.      All Objections to any category of documents to be produced pursuant to this Request or to any definition or instruction it contains shall be in writing and delivered to Plaintiff's counsel within the time provided in the applicable Florida Rules of Civil Procedure, or at such other time as is agreed upon by the parties or ordered by this Court.

6.      You are hereby put on notice not to destroy, conceal or alter any paper or electronic files, other data generated by and/or stored on computer systems and storage media (e.g., hard disks, floppy disks, backup tapes), or any other electronic data, such as voicemail. This includes, but is not limited to: email and other electronic communications; word processing documents; spreadsheets; databases; calendars; telephone logs; contact manager information; Internet usage files; offline storage or information stored on removable media; information contained on laptops or other portable devices; and network access information. The laws and rules prohibiting destruction of evidence apply to electronically-stored information in the same manner that they apply to other evidence. Due to its format, electronic information is easily deleted, modified or corrupted. Accordingly, you must take every reasonable step to preserve this information until the final resolution of this matter, including the preservation of such information from hard drives if computers are sold during the course of the litigation. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

7.      In the event that any document called for this Request has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author, recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

8.      Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

9.      Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to defendant, if any.

10. If you contend that it would be unreasonable burdensome to obtain and provide all of the documents called for in response to any one of these requests, then in response to the appropriate request:

    (a) Furnish each such document that is available to you without undertaking what you contend to be an unreasonable burden;

    (b) State with particularity the grounds on which you contend that additional efforts to obtain such documents would be unreasonably burdensome; and

    (c) Describe with particularity the efforts made by you to secure such documents, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such documents, including the duration of time spent and nature of work done by each person.

11. Unless otherwise indicated, all requests include the time period from the date of the Loss to the date you received this request.

12. When producing the required documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

13. When producing the required documents, please produce all other documents that are clipped, stapled or otherwise attached to any requested document.

14. In the event such file(s) or document(s) has (have) been removed, either for the purpose of this action or form some other purpose, please state the name and address of the person who removed the file, the title of the file and each sub-file, if any, maintained within the file, and the present location of the file.

## <u>REQUESTS FOR PRODUCTION OF DOCUMENTS AS TO CLAIM NUMBER 154316</u>

1. A true and correct copy of all the applicable insurance policy issued to the Plaintiff(s), by Defendant, including any and all endorsements in effect on the date of the loss.

2. All documents regarding the first notice of loss report, report from agent of the loss, or correspondence from Plaintiff(s), named insured(s) or attorneys.

3. All telephone messages to or from you, or any of your agents on your behalf regarding receipt of notice of claims for the subject Claim.

4.      All interoffice memoranda and claim notes regarding receipt of notice of claims and telephone conversations with anyone about the receipt of notice of claims for the subject Claim.

5.      All correspondence to or from anyone, including any insurance agencies, any employers, any agencies hired as adjusters to investigate the subject Claim.

6.      Any and all claim forms, including proof of loss forms, notice of loss reports, authorization forms and any other claim forms contained in said file in connection with the subject Claim.

7.      Any and all documents containing any information on what was said by the plaintiff(s), or plaintiff(s)' agent(s) at any time during the handling and processing of the subject Claim including adjuster notes, claim reports, interoffice memorandum, tape recordings of any statements made by plaintiff(s), or plaintiff(s)' agent(s), Examination Under Oath transcripts, and any transcripts or written statements from the plaintiff(s), or plaintiff(s)' agent(s).

8.      Each and every timesheet, log and all other documents reflecting time spent by defendant, at the Plaintiff(s) property for the subject Claim.

9.      Each and every document, evidencing the name, address, and the position/relationship with defendant, of every individual who has visited or plans to visit the Plaintiff(s) property on behalf of defendant for the subject Claim.

10.     Copies of any photographs and inspection reports of the insured property before the date of loss of the subject Claim.

11.     Copies of any photographs and inspection reports of the insured property after the date of loss of the subject Claim.

12.     Any and all photographs and inspection reports, appraisal reports, roof and plumbing reports of the insured property received by the insurance carrier before and after the date of loss of the subject Claim.

13.     Any and all correspondence or written communications from the defendant to the Plaintiff(s) which in any manner pertains to the Plaintiff(s) loss as described in the Complaint in connection with the subject Claim.

14.     Any and all correspondence or written communications from the Plaintiff(s) to the defendant, which in any manner pertains to the plaintiff(s) loss as described in the Complaint in connection with the subject Claim.

15.     Any and all documents of whatever nature and kind submitted by the Plaintiff and/or Plaintiff(s) agent(s), employee(s), attorneys, etc., to the Defendant, its agents, and/or employees in regard to the subject Claim.

16.     Any and all written communication between Defendant and any third party concerning the processing, acceptance, or denial of any portion of the subject Claim.

17.     All correspondence, forms, notations, memoranda or other information wherein you transmitted any information about Plaintiff(s) to any third party not an employee of defendant in connection with the subject Claim.

18.     Any and all materials, papers, documents, photographs or tangible things of any type relied upon by Defendant, other than the insurance policy, as a basis for exclusion of any portions of Plaintiff(s) claims for damages for the subject Claim.

19.     All inspection reports or other documents that evidence the cause of the damages at issue in the subject claim as determined by you or your representative(s) in connection with the subject Claim or loss.

20.     All correspondence to and from any adjusters, public adjusters, contractor or appraiser that reviewed any damage which is the subject of the action herein including any printouts or explanations or supporting documentation for any reductions suggested by the adjuster, public adjuster, contractor or appraiser.

21.     Any and all photographs and/or video tapes within the possession, custody and control of the defendant, their agents or employees, concerning the subject matter of this litigation. As grounds for this paragraph, the Plaintiff(s) would state that they cannot without undue hardship, obtain a substantial equivalent of these photographs.

22.     Any and all estimates of damages to real property, personal property, expenses for removal for any coverage available for Plaintiff(s) losses that are the subject matter of this litigation and/or the subject Claim.

23.     Any and all estimates of damages to real property, personal property, or expenses generated by or on behalf of the Defendant in connection with the subject Claim.

24.     Any material or property that you or your representatives removed from the insured residence or business.

25.     Copies of any and all documents that show payments made to Plaintiff(s), if any, on this claim, including but not limited to a copy of each check issued to Plaintiff for payment of any portion of the subject claim.

26.     All appraisals of loss or value of loss prepared by, for, or on behalf of Defendant regarding the subject loss of Plaintiff(s) in connection with the subject Loss or Claim.

27.     Copies of any diagrams, models, drawings, sketches, blueprints or any other reproduction of the subject Property made before or after the subject loss.

28.     Copies of any and all Proof of Loss forms submitted by Plaintiff(s), their agent(s) to defendant, with copies of all supporting documentation.

29.     All investigative reports concerning Plaintiff(s) claim, which is subject of this litigation, and all written communications between defendant and any third party concerning said report(s) in connection with the subject Loss or the subject Claim.

30.     Any document showing or explaining what items defendant made payment upon, the amount of damage, and how the amount was determined.

31.     Any and all writings, memorandums, notes or other material reflecting examination by the defendant of any of the damage to the insured premises not covered above.

32.     Any and all statements, whether written, oral or recorded, in whatever fashion, taken of the Plaintiff(s) and/or their agents, servants, employees, etc., in regard to the subject Loss and/or the subject Claim.

33.     Any and all statements, whether written, oral or recorded in whatever fashion, taken of all independent witnesses or other persons by the defendant with regard to the subject Claim.

34.     A list and/or documents showing the names, addresses and telephone numbers of any and all witnesses whose statements have been taken, indicating their full legal name, addresses and telephone number in regard to the subject Claim and/or Loss.

35.     All report(s), including adjuster(s) report(s), examiner(s) report (s) and expert report(s), including without limitation, diagrams, photographs, notes, memoranda, field notes, samples, contracts, video tapes, correspondence, calculations, rough drafts, partial drafts, and laboratory reports related in any way to the facts of the claims in the Complaint or to the subject Claim.

36.     Any and all documentation or other tangible evidence which you contend supports your claim that all conditions precedent to bringing this action have not been met.

37.     All correspondence to the insured or their representative informing them of the right to participate in mediation pursuant to Section 627.7015 Fla Stat., and all documents explaining mediation to insured.

38.     All documents, including photographs, that Defendant reviewed, relied on, identified or referred to in answering Plaintiff(s) First Set of Interrogatories.

39.     All documents, including photographs, that defendant relied upon as basis for payment of the subject Claim.

40.     All written or computerized records of any investigation or adjustment activities from the date of the loss, through the date of this lawsuit or the date litigation was first reasonably anticipated or conducted in connection with the subject Claim.

41.     All written or computerized communications and written or computerized records of oral communications, whether in person or by phone, to or from any employee or agent of defendant that concern, refer or relate in any way to the decision to pay and the amount paid in connection with the subject Claim.

42.     Any and all documents, notes, records, test results and related materials relied upon by you in reaching your conclusion to withhold payment on the subject Claim.

43.     All documents which indicate or support the date when Defendant contends it first reasonably anticipated litigation with Plaintiff(s) and all reasons it reasonably anticipated litigation at that time I connection with the subject Claim.

44.     For each and every affirmative defense, all documents, communications, which you relied on in each and every affirmative defense and/or any and every document, electronic

documents, photographs, and/or communications which support each of Defendant's affirmative defenses.

45.     All communications, correspondence and/or documents produced to or by any other insurance company to Defendant regarding the subject Claim.

46.     Defendant's privilege log, pursuant to Florida Rule of Civil Procedure 1.280(b)(5), which identifies with particularity any and all documents withheld in response to the preceding paragraphs and in response to Plaintiff(s) First Set of Interrogatories as privileged, confidential or otherwise protected from discovery.

**Dated:**  June 29, 2023.                                **QUINTANA LAW, PA**
                                                                         *Attorneys for Plaintiff*
                                                                         237 S. Dixie Highway
                                                                         Floor 4, Suite #426
                                                                         Coral Gables, Florida 33133
                                                                         Tel. (305) 376-0821
                                                                         Primary Email: bquintana@quintanalawpa.com
                                                                         Secondary Email: paralegal@quintanalawpa.com


                                                     By:     */s/ Brittany Quintana Marti*
                                                                         Brittany Quintana Marti, Esq.
                                                                         Fla. Bar No. 98746

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2023-017794-CA-01

J'CAM INVESTMENTS LLC,

     Plaintiff,

v.

GREAT LAKES INSURANCE SE,

     Defendant.

_____/

## **SUMMONS**

STATE OF FLORIDA:

    YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint, Request for Production as to Claim 154317, Request for Production as to Claim 154316, First Set of Interrogatories, and Notice of Requesting Depositions in this action on the Defendant:

GREAT LAKES INSURANCE SE
c/o Chief Financial Officer as RA
200 E. GAINES ST
TALLAHASSEE, FL 32399-0000

    The Defendant is hereby required to serve written defenses to the Complaint on Plaintiff's attorney, whose name and address are: Quintana Law, PA, 237 S Dixie Highway, Floor 4, Suite 426, Coral Gables, Florida 33133 within twenty (20) days after service of this summons on the Defendant, exclusive of the day of service and to file the original of the defenses with the clerk of this court either before service on Plaintiff's attorney or immediately thereafter. If the Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

    WITNESS my hand and the seal of said court on _____.
                                          7/12/2023

                         As Clerk of the Court

Juan Fernandez-Barquin,
Clerk of the Court and Comptroller

                         /36565

By: _____

